# United States Court of Appeals for the Federal Circuit

2007-1456

DOMINANT SEMICONDUCTORS SDN. BHD.,

Plaintiff-Appellant,

v.

OSRAM GMBH, OSRAM OPTO SEMICONDUCTORS GMBH,
OSRAM OPTO SEMICONDUCTORS, INC., and OSRAM SYLVANIA, INC.,

Defendants-Appellees.

Robert L. Wright, Robert L. Wright, P.C., of Fort Worth, Texas, argued for plaintiff-appellant. With him on the brief was Scott E. Lindsey.

Alan D. Smith, Fish & Richardson P.C., of Boston, Massachusetts, argued for defendants-appellees. With him on the brief was Elizabeth A. Brown.

Appealed from: United States District Court for the Northern District of California

Judge Jeremy Fogel

# United States Court of Appeals for the Federal Circuit

2007-1456

DOMINANT SEMICONDUCTORS SDN. BHD.,

Plaintiff-Appellant,

v.

OSRAM GMBH, OSRAM SEMICONDUCTORS GMBH, OSRAM OPTO
SEMICONDUCTORS, INC., and OSRAM SYLVANIA, INC.,

Defendants-Appellees.

Appeal from the United States District Court for the Northern District of California in case no. 04-CV-3319, Judge Jeremy Fogel.

_____

DECIDED: April 23, 2008

_____

Before MICHEL, Chief Judge, DYK, Circuit Judge, and KENNELLY,[*] District Judge.

KENNELLY, District Judge.

Dominant Semiconductors Sdn. Bhd. ("Dominant") appeals from the decision of the United States District Court for the Northern District of California granting summary judgment in favor of OSRAM GmbH ("OSRAM") on Dominant's claims for unfair competition, intentional interference with contractual relations, interference with prospective economic advantage, and trade libel arising from OSRAM's communications to its customers that Dominant infringed several of its patents.

---

[*]    Honorable Matthew F. Kennelly, District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

Because the district court correctly determined that OSRAM's communications were not objectively baseless, we affirm.

## BACKGROUND

OSRAM and Dominant are both manufacturers of small semiconductor devices known as light-emitting diodes ("LEDs"). OSRAM, a subsidiary of Siemens that was founded in Germany, holds a number of patents relating to LED technology. Dominant, a Malaysian company founded in 2000, is managed by one of OSRAM's former production directors, Tay Kheng Chiong ("Tay").

In the summer of 2001, Infineon Technologies/OSRAM Semiconductors ("Infineon"), another Siemens subsidiary, sent some of its customers a letter ("Property Rights Letter") entitled "Re: Intellectual Property Rights." Joint Appendix at 11. The letter stated that Infineon had received "information regarding possible infringement of [its] intellectual property rights" and that it would "not hesitate to undertake legal action in the event that any infringement . . . has occurred or will take place." Id. The letter further stated, "We expect you to respect our existing Non-Disclosure Agreements in their entirety and to ensure that our interests are fully protected at all times under the same." Id.

OSRAM's outside patent counsel, Richard Schachtner of the German law firm Epping Hermann Fisher, wrote an opinion letter ("Schachtner Letter") on September 17, 2003, stating his opinion that several of Dominant's LED products were infringing OSRAM patents. In the letter, Schachtner stated:

> It is our opinion that according to the present information all DOMINANT LED products except colored Spice LEDs make unauthorized use of at least one most of them of at least two or more of OSRAM's patent families directed to LED housings and white light emitting LEDs. All white light emitting LEDs of

2007-1456                              2

Dominant make use of at least three, most of them of even [sic] four respective OSRAM patent families. In our opinion it can be assumed, that with the help of the respective patents listed in the enclosed table in the most important countries the import, use and sale of most DOMINANT LED products can be stopped.

Finally we want to emphasize that we do not mean to imply by silence herein that there are not other OSRAM patents which are infringed by LED products manufactured and offered by DOMINANT.

Joint Appendix at 51. Schachtner attached to his letter a two-page table in which he compared Dominant LED products to OSRAM patents directed to LED housing and white light emitting LEDs. The table listed six types of Dominant LED products; their "Product Characteristics according to Dominant's Catalogue Summary dated March 2003"; "Related OSRAM patent rights"; brief observations about the common features of the Dominant products and the OSRAM patents; and conclusions about infringement. Id. at 52. According to the table, Schachtner believed that Dominant was infringing the following United States patents: three particle size patents (the '247, '259, and '780 patents), four lead frame patents, three of which he believed Dominant might infringe "at least under doctrine of equivalents" (the '902, '321, '580 and '130 patents), a conversion principle patent (the '930 patent), and a mini sidelooker patent (the '745 patent).[1] Id. at 52-53.

Michael Wohs, OSRAM's Director of Distribution in Europe and Emerging Markets, attached the Schachtner Letter to an email ("Wohs Email") he sent on September 25, 2003 to the company's "Colleagues, Sales and Distribution Partners." Id. at 54. Wohs stated in the email that he was sending the "official statement of the OSRAM's patent counsel concerning 'DOMINANT' products." Id. He also suggested to

---

[1] The full patent numbers are: U.S. Patent Nos. 6,613,247, 6,245,259, 6,592,780, 6,376,902, 6,469,321, 6,573,580, 6,459,130, 6,576,930, and 6,432,745.

the recipients of the email that they might wish to show the Schachtner Letter to their customers along with the following brief statement:

> Dear Customer
> attached You'll find the official statement of the OSRAM's patent counsel concerning potential infringement of several OSRAM patents with "DOMINANT" products. We therefore have the possibility (if necessary with the rulings of legal authorities) to stop the import, sale and use of the related "DOMINANT" products in the most important countries. In consequencies [sic] the final endproduct [sic] of your customers must be withdrawn from the market.

Id.

The following spring, in May 2004, OSRAM filed a complaint against Dominant before the United States International Trade Commission ("ITC"), alleging that Dominant LED products infringed nine OSRAM patents in violation of section 337 of the Tariff Act of 1930 as amended, 19 U.S.C. § 1337. The accused products were Dominant's white, power, super-small, nova, and bi-color LEDs. The patents OSRAM asserted included seven of the nine U.S. patents mentioned in the Schachtner Letter (the '247, '259, and '780 particle size patents; the '902, '321, and '580 lead frame patents; and the '930 conversion principle patent) and two additional particle size patents (the '861 and '301 patents).[2] OSRAM subsequently amended its ITC complaint in July 2004, eliminating its claims of infringement by Dominant's bi-color LEDs and alleging that Dominant's super-small LEDs additionally infringed a tenth OSRAM patent, the '673 patent.[3] The tenth asserted patent had not been referenced in the Schachtner Letter.

OSRAM issued two press releases ("the Press Releases") shortly after it filed its ITC complaint. In the first, on June 8, 2004, OSRAM announced that it had filed the complaint, described the allegations of infringement, and stated that it was seeking

---

[2] U.S. Patent Nos. 6,066,861 and 6,277,301.
[3] U.S. Patent No. 6,716,673.

injunctive relief to prevent the import into the United States of Dominant's infringing LEDs and products containing them. In a second press release, on July 19, 2004, OSRAM announced that one of its American distributors had sent a declaration promising that it would not "import or market any LEDs that infringe on OSRAM's patent rights." Id. at 257. The press release noted that the distributor's declaration "relates in particular to products supplied by the manufacturer Dominant Semiconductors . . . against whom OSRAM . . . has filed a lawsuit with the ITC . . . for infringement of patents." Id.

In its answer to the amended ITC complaint, Dominant raised—and subsequently withdrew—a patent misuse affirmative defense based on the Schachtner Letter and the Wohs Email. Dominant moved for summary judgment of non-infringement, but the Administrative Law Judge ("ALJ") denied its motion on November 24, 2004. In re Certain Light Emitting Diodes and Products Containing Same, Inv. No. 337-TA-512 (Int'l Trade Comm'n Nov. 24, 2004).

Following a trial, the ALJ issued an initial determination in May 2005. The ALJ found that Dominant's super-small LEDs infringed the '673 patent in violation of 35 U.S.C. § 271(a) and that there was a domestic industry with respect to that patent. In re Certain Light Emitting Diodes and Products Containing Same, Inv. No. 337-TA-512 (Int'l Trade Comm'n May 10, 2005). The ALJ did not, however, find infringement of OSRAM's nine other patents. He found the particle size patents invalid for indefiniteness under 35 U.S.C. § 112; that Dominant did not infringe, and OSRAM had not satisfied the domestic industry requirement with respect to, the '930 patent; and that Dominant's accused products did not infringe the lead frame patents.

After reviewing the ALJ's findings and conclusions, the ITC held on August 10, 2005 that the particle size patents were not, in fact, invalid for indefiniteness, and it remanded the case to the ALJ to determine whether those patents were infringed. In re Certain Light-Emitting Diodes and Products Containing Same, Inv. No. 337-TA-512 (Int'l Trade Comm'n Aug. 10, 2005). The ITC agreed with the ALJ that Dominant's LEDs did not infringe OSRAM's '930 patent. Finally, the ITC deferred addressing the issue of infringement of the lead frame patents until after the ALJ had made an infringement determination about the particle size patents on remand.

After examining the particle size patents on remand, the ALJ found no violation of section 337 on the ground that OSRAM had failed to show that there was an industry in the United States that practices those patents and, further, that some of Dominant's accused products did not infringe the asserted claims of the particle size patents. The ITC issued notice of its final determination with regard to OSRAM's particle size and lead frame patents on January 11, 2006, ruling that Dominant's accused products did not infringe the particle size patents but that they did infringe the lead frame patents. In re Certain Light-Emitting Diodes and Products Containing Same, Inv. No. 337-TA-512 (Int'l Trade Comm'n Jan. 26, 2006).

On appeal, this Court reversed the ITC's non-infringement ruling regarding the particle size patents. We concluded that the domestic industry prong of Section 337 was satisfied, the ITC had erred in its claim construction, and on the correct claim construction OSRAM's particle size patents were, in fact, infringed. OSRAM GmbH v. Int'l Trade Comm'n, 505 F.3d 1351, 1353 (Fed. Cir. 2007).

Dominant commenced this lawsuit on August 13, 2004, shortly after filing its answer to OSRAM's complaint before the ITC. Dominant asserted claims for unfair competition under the Lanham Act and for unfair competition, trade libel, and interference with contractual relations and prospective economic advantage under California statutory and common law. Underlying Dominant's claims was its contention that in the Property Rights Letter in 2001, the Schachtner Letter and Wohs Email in 2003, and the 2004 Press Releases, OSRAM made false and misleading infringement allegations about Dominant's products and asserted its patent rights in bad faith.

OSRAM moved for summary judgment, arguing that there was no evidence that its pre-litigation communications had been made in bad faith because it relied on the advice of attorney Schachtner and because the rulings in the ITC case established that Schachtner's opinion was well-founded. In opposing summary judgment, Dominant focused on the reliability—or, as Dominant asserted, the unreliability—of the findings in the Schachtner Letter and the Wohs Email. First, Dominant contended that OSRAM's failure to provide evidence substantiating the Schachtner Letter's infringement analysis gave rise to a genuine issue of material fact as to the reliability of the analysis. Second, Dominant argued that the assertions in the Schachtner Letter revealed their own unreliability and could not have been supported by information available to Schachtner at the time. Finally, Dominant argued that the Schachtner Letter and the Wohs Email created a false impression that all of Dominant's products infringed OSRAM's patents.

The district court granted OSRAM's motion for summary judgment on June 21, 2005. Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, No. C04-3319 JF (N.D. Cal. June 21, 2005). It found that the infringement allegations in the Wohs Email and

the Press Releases were "not objectively baseless and thus were not made in bad faith." Id., slip op. at 7. The court concluded that it was objectively reasonable for OSRAM to rely on an opinion by patent counsel when there was no evidence that the analysis was unreasonable on its face or contained unsupportable conclusions. The district court did not consider the Property Rights Letter because Dominant had asserted no basis to attribute Infineon's actions to OSRAM. With no evidence of objective unreasonableness, the court determined, OSRAM could not be held liable on Dominant's claims for unfair competition. The court further concluded that because Dominant's state law claims also arose out of OSRAM's good-faith assertion of its patent rights, those claims were preempted by federal patent law.

Dominant filed a timely notice of appeal, stating that it was appealing to the Ninth Circuit. Shortly before oral argument in the Ninth Circuit, that court asked the parties to consider whether Dominant's appeal might lie more properly in this Court. The Ninth Circuit then granted a joint motion by the parties to transfer the appeal to this Court. Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, No. 05-16400 (9th Cir. Jul. 5, 2007). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1), "which enables this court to hear appeals from a district court 'if the jurisdiction of that court was based, in whole or in part, on [28 U.S.C. § 1338].'" Bd. of Regents v. Nippon Tel. & Tel Corp., 414 F.3d 1358, 1361 (Fed. Cir. 2005) (citing 28 U.S.C. § 1295(a)(1)). Jurisdiction under section 1338(a) extends to cases "'. . . in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.'"

Biotechnology Indus. Org. v. District of Columbia, 496 F.3d 1362, 1367 (Fed. Cir. 2007) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 807 (1988)). Because Dominant's claims arise out of OSRAM's communication of its patent rights, patent law is a necessary element of Dominant's claims. The district court thus had jurisdiction based in part on section 1338.[4]

## DISCUSSION

We review a district court's grant of summary judgment without deference, applying the same standard applicable in the district court. Lacavera v. Dudas, 441 F.3d 1380, 1382 (Fed. Cir. 2006). "On procedural issues not unique to patent law, we apply the standard of review of the regional circuit." Go Med. Indus. Pty., Ltd. v. Inmed Corp., 471 F.3d 1264, 1272 (Fed. Cir. 2006). We apply Federal Circuit law to patent issues as well as to our determination on whether state-law tort claims are preempted by federal patent law. Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1374 (Fed. Cir. 2004) (citing Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999)).

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a claim of the type at issue here, "[t]o survive summary judgment, the party challenging such statements must present affirmative evidence sufficient for a reasonable jury to conclude that the

---

[4] Further, under law-of-the case principles, because we find that the Ninth Circuit's transfer decision was "plausible," our jurisdictional inquiry need go no further. See Christianson, 486 U.S. at 819.

patentee acted in bad faith, in light of the burden of clear and convincing evidence that will adhere at trial." Golan v. Pingel Enter., Inc., 310 F.3d 1360, 1371 (Fed. Cir. 2002).

I.

We have stated that "federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith." Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1336 (Fed. Cir. 1998). Federal patent law likewise preempts state-law tort liability when a patentee in good faith communicates allegations of infringement of its patent. See, e.g., Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1355 (Fed. Cir. 1999). As a result, "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." Id.

Bad faith includes separate objective and subjective components. Mikohn Gaming Corp v. Acres Gaming, Inc., 165 F.3d 891, 897 (Fed. Cir. 1998). We have held that the bad faith standard of Zenith cannot be satisfied "in the absence of a showing that the claims asserted were objectively baseless." Globetrotter, 362 F.3d at 1375. To be objectively baseless, the infringement allegations must be such that "no reasonable litigant could reasonably expect success on the merits." GP Indus., Inc. v. Eran Indus., Inc., 500 F.3d 1369, 1374 (Fed. Cir. 2007) (citing Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993)).[5]

---

[5]    In Globetrotter, we held that the objectively baseless standard applies to "claims based on communications alleging patent infringement." 362 F.3d at 1377. We acknowledged that "federal patent law preempts state law that punishes merely 'publicizing a patent in the marketplace[,] unless the plaintiff can show that the patentholder acted in bad faith.'" Id. at n.9 (quoting Hunter Douglas, Inc., 153 F.3d at 1336). We did not then decide whether the "objectively baseless" standard applies in such situations. Id. at n.9.

Dominant asserts that without having conducted a proper infringement analysis, OSRAM must have made the statements at issue without regard to whether they were true, which Dominant contends makes the statements actionable under Mikohn. We stated in Mikohn, however, that "bad faith is not supported when the information is objectively accurate" and that "[c]ommunication of accurate information about patent rights, whether by direct notice to the potential infringers or by publicity release, does not support a finding of bad faith." 165 F.3d at 897-98; see also Golan, 310 F.3d at 1371 ("[P]atentees do not violate the rules of fair competition by making accurate representations.").

The objective baselessness standard that we applied in Globetrotter to communications alleging patent infringement originated in Professional Real Estate, where the Supreme Court held that "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent." Prof'l Real Estate, 508 U.S. at 57. In elaborating on what is required to satisfy the objective standard, the Court stated that "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." Id. at 60 n.5. At oral argument in the present case, Dominant contended that the remainder of footnote 5 in Professional Real Estate supports its assertion that the ultimate outcome of the litigation has no bearing on whether the allegations were objectively baseless at the outset. In the referenced passage, however, the Court said

However, in a recent case in which a plaintiff sought a declaratory judgment of noninfringement and alleged various state-law tort claims against a defendant for communicating infringement allegations to its own distributors and contractors, we held that because the plaintiff could not show that the defendant's assertions were objectively baseless, the bad faith standard could not be satisfied. GP Indus., Inc. v. Eran Indus., Inc., 500 F.3d 1369, 1375 (Fed. Cir. 2007). Thus, the "objectively baseless" standard applies to publicizing a patent in the marketplace as well as to pre-litigation communications.

only that when a defendant has <u>lost</u> the underlying litigation, "a court must 'resist the understandable temptation to engage in <u>post hoc</u> reasoning by concluding' that an ultimately unsuccessful 'action must have been unreasonable or without foundation.'" <u>Id.</u> (citing <u>Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n</u>, 434 U.S. 412, 421-22 (1978)). Here, however, by the time the district court granted the motion for summary judgment at issue in this appeal, OSRAM had successfully defeated Dominant's motion for summary judgment of non-infringement in the underlying litigation, and the ALJ had found infringement of one of OSRAM's asserted patents.[6]

The Court's subsequent discussion in <u>Professional Real Estate</u> suggests that a successful outcome of the underlying litigation refutes a conclusion that the litigation was objectively baseless at the outset. In its discussion of what is required to prove objective baselessness, the Court stated that under the objective prong, "sham litigation must constitute the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief." <u>Id.</u> at 62. Therefore, a plaintiff seeking to prove bad faith in an underlying lawsuit must "prove that the defendant lacked probable cause to institute an <u>unsuccessful</u> civil lawsuit and that the defendant pressed the action for an improper, malicious purpose." <u>Id.</u> (emphasis added). This suggests that when an underlying infringement suit was not unsuccessful, there is no basis to determine that the plaintiff in that suit lacked probable cause or, as it applies to the present situation, had no objective basis to claim infringement before filing suit.

---

[6] To the extent the ALJ found that Dominant did not infringe other OSRAM patents, we follow the Supreme Court's instruction to "resist the understandable temptation" to conclude that OSRAM's marketplace allegations regarding those patents were objectively baseless as a result. <u>See</u> <u>Prof'l Real Estate</u>, 508 U.S. at 60 n.5.

## II.

Despite the settled standard in this area, Dominant argues that we should apply a new standard for objective baselessness: the same one that we have applied in the context of requests for sanctions under Federal Rule of Civil Procedure 11. Dominant asserts that this Court has affirmed imposition of Rule 11 sanctions when a patentee sued for patent infringement before testing the accused product. See Q-Pharma, Inc. v. Andrews Jergens, Co., 360 F.2d 1295, 1300-01 (Fed. Cir. 2004) ("In the context of patent infringement actions, we have interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement."). Dominant urges that to be consistent, this court should impose the same standard in lawsuits alleging unfair competition arising from assertion of patent rights, a standard that it contends OSRAM would not be able to meet, because (Dominant argues) Schachtner did not test the accused devices before rendering his opinion.

There are two problems with this argument. First, we have never stated that the Rule 11 standard is the same as the standard applied in the line of cases following Professional Real Estate and Globetrotter. Indeed, the purpose and impact of the Globetrotter standard, which applies to pre-litigation infringement allegations, is entirely distinct from that of Rule 11, which applies to pleadings filed in court.

Second, even if the standards were the same, it is unclear how that would help Dominant. Dominant has not identified a single case in which, when a party had not lost the underlying litigation, a court awarded Rule 11 sanctions against that party for failing to conduct a sufficient infringement analysis prior to filing suit. Dominant disputes that

OSRAM's infringement allegations were vindicated in the ITC proceedings. But the ALJ had denied Dominant's motion for summary judgment of non-infringement as to each of OSRAM's asserted patents, thus essentially rejecting the argument that OSRAM's infringement allegations were baseless. And the ALJ, after trial, found infringement of one of OSRAM's patents.[7]

Dominant also argues that the ITC proceedings are irrelevant to the issue of OSRAM's bad faith during the 2001-2003 period in which the challenged communications were made, because OSRAM did not commence its ITC suit until 2004. Dominant contends that any information OSRAM learned about possible infringement after it published the letters cannot be used, after the fact, to "bootstrap" an objective basis for its earlier statements. Dominant has not alleged, however, that it changed the design of its accused products between the publication of the Schachtner Letter and the beginning of the ITC proceedings.

Dominant's arguments in this area appear to be based on a misapprehension of where the burden of persuasion lies. Dominant asserts that under Ninth Circuit law, OSRAM has "the burden of production and the burden of persuasion" on summary judgment. Reply Br. at 2 (citing Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,

---

[7]    The later decisions of the full Commission, the ALJ on remand, and this court occurred after the district court granted the summary judgment motion at issue in this appeal, thus we do not rely on them here. But we note that later events confirmed that the ALJ's summary judgment decision was correct. Of OSRAM's nine existing U.S. patents that Schachtner identified in his 2003 letter, eight were included in OSRAM's ITC suit, and six of those eight were eventually found infringed by Dominant's accused products. The ITC found in its final determination that Dominant's products infringed three lead frame patents identified by Schachtner (the '902, '321, and '580 patents), as well as two not mentioned in his letter, under the doctrine of equivalents. Further, we held on October 31, 2007 that Dominant's products also infringed OSRAM's three particle size patents (the '247, '259, and '780 patents), which were also referenced in the Schachtner Letter.

210 F.3d 1099, 1102 (9th Cir. 2000)).  Contrary to Dominant's assertions, to obtain summary judgment, OSRAM did not bear the burden of proving that it made its communications in good faith.  Rather, because it was not the party with the ultimate burden of persuasion at trial, OSRAM could carry its initial burden of production for purposes of seeking summary judgment either by "produc[ing] evidence negating an essential element of [Dominant's] case, or, after suitable discovery, [by showing] that [Dominant] does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine, 210 F.3d at 1106.  Dominant argues that OSRAM may use only the former method because, it contends, OSRAM did not allow Dominant suitable discovery before it moved for summary judgment.  The Supreme Court has held, however, that "[a]ny potential problems with such premature motions can be adequately dealt with under Rule 56(f), which allows . . . the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery."  Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986).  Although regular discovery had been deferred when OSRAM moved for summary judgment, Dominant never sought, pursuant to Federal Rule of Civil Procedure 56(f), to delay consideration of OSRAM's motion.  Both methods of meeting its burden of production therefore remained open to OSRAM.

Under either method, OSRAM satisfied its burden of production.  First, it produced evidence that its earlier claims of infringement were not objectively baseless: the ITC's denial of Dominant's motion for summary judgment of non-infringement, the ITC's later findings that certain of Dominant's products infringed certain OSRAM patents, and our own finding that Dominant infringed OSRAM's particle size patents.

Second, OSRAM argued that because Dominant had no evidence that OSRAM's communications were objectively baseless, Dominant could not meet its burden of persuasion at trial.

Because OSRAM met its burden of production, to survive summary judgment Dominant had to offer evidence from which a jury reasonably could find that OSRAM had acted in bad faith. See Golan, 310 F.3d at 1371. Dominant failed to do so. Its focus in the district court and on appeal is on its contention that the Schachtner Letter was based on inadequate research. Dominant argues that there is no indication that Schachtner tested Dominant's products, construed the claims of any of OSRAM's patents, or considered an earlier analysis of certain Dominant products suggesting that infringement was an open question. Dominant contends that as a result, OSRAM had no reasonable basis to rely on the Schachtner letter when it made its later communications to the marketplace.

Dominant's contentions might be probative of subjective baselessness, but they do not help to show that a jury reasonably could find that Dominant could meet its burden of proving by clear and convincing evidence that OSRAM's infringement allegations were objectively baseless. In GP Industries, we stated that "[s]ubjective considerations of bad faith are irrelevant if the [challenged] assertions are not objectively baseless." 500 F.3d at 1375 (citing Prof'l Real Estate, 508 U.S. at 60). We found in that case that the trial court's analysis of bad faith had "encompassed subjective considerations and unconvincing objective factors." Id. We stated, for example, that the fact that the accused party "did not show that any expert advice or opinions were sought before [it] made the allegations of infringement" was "not [a]

convincing objective factor[ ]." Id.  Though the patents and products at issue in this case are undoubtedly more complex than the gutter covers at issue in GP Industries, the distinction between the objective and subjective elements of the bad faith standard remains viable.

In the face of OSRAM's evidence showing that the ALJ had held that a trial was necessary to determine whether Dominant infringed most of the patents referenced in the Schachtner Letter, and that the ALJ later found infringement as to one of those patents, Dominant produced no evidence of objective baselessness at all—in other words, it produced no evidence that Schachtner's claims of infringement were factually unsound.  Dominant's focus on the contention that there was no indication that Schachtner had performed a sufficient analysis, though arguably relevant on the issue of subjective intent, had nothing to do with the issue of whether Schachtner's contentions were objectively baseless.  In other words, objective baselessness requires a determination based on the record ultimately made in the infringement proceedings and the record of the state tort action, and not on the basis of information available to the patentee at the time the allegations were made.  Because Dominant failed to identify a genuine issue of fact regarding whether OSRAM's communications were objectively baseless, entry of summary judgment was appropriate.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

## AFFIRMED