# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00206-CV

### Xitronix Corporation, Appellant

#### v.

### KLA-Tencor Corporation, Individually and d/b/a KLA-Tencor, Inc., Appellee

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
## NO. D-1-GN-11-000962, HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is the second time that Xitronix Corporation has sued KLA-Tencor Corporation for accusing Xitronix of patent infringement. The first time involved a federal suit in which Xitronix sought declaratory and injunctive relief in response to KLA-Tencor's threats to enforce its patent rights in the face of Xitronix's alleged infringement. In that first suit, Xitronix sought a declaration that its technology did not infringe KLA-Tencor's patents and that KLA-Tencor's patent claims[1] were invalid and unenforceable for various reasons. KLA-Tencor lodged infringement counterclaims. After a jury trial, the federal district court rendered judgment in favor of Xitronix,

---

[1] In patent law, the term "patent claim" refers to one or more of the required elements a patentee must include in its patent application and consists of a specific description of the invention. *See* 35 U.S.C. §§ 111(a)(2) (patent application shall include specification, drawing, and oath), 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.").

finding not only that Xitronix had not infringed KLA-Tencor's patents, but also that KLA-Tencor's challenged patent claims were indeed invalid.

In this second lawsuit, Xitronix asserts business-tort claims for damages under Texas law arising from KLA-Tencor's patent-infringement allegations and its alleged collusion with Sematech, Inc. and its employee James Martin Price, arguing that KLA-Tencor harmed Xitronix by engaging in business disparagement, tortious interference with prospective business relationships, and violations of antitrust law. KLA-Tencor removed the case to the same federal court that adjudicated the first lawsuit, but that court remanded the cause to the Travis County District Court, concluding that it had no federal subject-matter jurisdiction because Xitronix's tort claims did not arise under federal patent laws. KLA-Tencor then filed a motion for summary judgment in the state court, arguing that it was entitled to judgment as a matter of law based on several grounds. Among them was its argument that Xitronix's claims in the current suit are barred by res judicata. We agree with KLA-Tencor and, accordingly, affirm the trial court's summary judgment disposing of all of Xitronix's claims against KLA-Tencor.[2]

### PROCEDURAL AND FACTUAL BACKGROUND

The technology underlying the dispute consists of measurement systems for use in process control of semiconductor manufacturing. In 2007, Xitronix received a patent (U.S. Patent No. 7,391,507) for a measurement method using photo-reflectance to detect electrical properties of

---

[2] The trial court did not specify which ground was the basis of its summary judgment. Thereore, we will affirm the judgment if any of the grounds specified in KLA-Tencor's motion are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

semiconductors. Previous patented technology belonging to KLA-Tencor—specifically U.S. Patents Nos. 7,362,411 and 7,126,690 (the '441 and '690 patents)—utilized similar components to those in Xitronix's technology, but detected thermal properties rather than electrical properties. After obtaining its patent, Xitronix began to seek funding to test its products utilizing the photo-reflectance method. Xitronix sought funding assistance from Sematech, a nonprofit consortium of microelectronics manufacturers located in Austin, Texas, and later entered into a contract with a Sematech subsidiary for the testing of Xitronix's products.

Xitronix alleges that in the meantime KLA-Tencor had been "familiarizing itself" with Xitronix's technology and added claims to its '441 patent that were directly "derived"[3] from Xitronix's technology. Xitronix alleges that KLA-Tencor then began implementing "the execution phase of a scheme to eliminate the competitive threat which Xitronix posed by fraudulently alleging that Xitronix was infringing KLA technology." As evidence of this scheme, Xitronix cites communications that KLA-Tencor allegedly had with Sematech employees and associates falsely accusing Xitronix's technology of infringing KLA-Tencor's patents as well as KLA-Tencor's public allegations of infringement in the form of its infringement counterclaims in the federal lawsuit.

In July 2008, Xitronix received correspondence from KLA-Tencor alleging patent infringement. Despite Xitronix's attempts to convince KLA-Tencor that its products were not infringing the '441 and '690 patents, KLA-Tencor allegedly informed Xitronix that it

---

[3] A claim that a patentee "derived" an invention from another attacks the requisite originality of the invention and attempts to establish the prior conception of the invention by another and communication of that concept to the patentee. *See Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993).

3

"had approximately one week to go out of business" before KLA-Tencor "would act on its conclusion" that Xitronix was infringing. Within days, Xitronix filed the aforementioned federal lawsuit seeking injunctive relief and a declaration of non-infringement and invalidity of certain claims in the '441 and '690 patents.

The first sentence of Xitronix's live complaint in that federal lawsuit stated, "This case concerns Defendant KLA's allegations of patent infringement." Besides seeking declarations that the '441 and '690 patent claims were invalid, the complaint also sought a permanent injunction enjoining KLA-Tencor and "any other entities acting in concert or participating with" it from "publishing, in any form, any statement claiming patent infringement by Xitronix" of the '441 and '690 patents. The complaint also alleged that "KLA has a pattern and practice of utilizing legal action against smaller companies to control market share" and that Xitronix has a "reasonable apprehension that KLA is prepared or preparing to employ the aforesaid pattern and practice against Xitronix to harm Xitronix in the marketplace." The complaint additionally alleged that KLA-Tencor had recently added several claims to its '441 patent that KLA-Tencor knew were derived from others' inventions and that the '441 inventors essentially plagiarized the published work of other scientists.

The crux of Xitronix's complaint against KLA-Tencor in this second lawsuit is that KLA-Tencor publicized allegations of Xitronix's infringement to the marketplace in bad faith, knowing its patent claims were invalid, and that Xitronix could not have been infringing the patents because, by definition, only valid patents may be infringed. *See* 35 U.S.C. § 282 (invalidity of patent or of any claim therein is defense in infringement action). Specifically, Xitronix alleges that well

4

before KLA-Tencor informed it directly of its alleged infringement, KLA-Tencor made similar representations to Sematech and Price, which representations were then further publicized to the marketplace, significantly harming Xitronix's business relationships and prospects.

**ANALYSIS**

Federal patent law generally preempts state-law tort liability, including claims for tortious interference and unfair competition, essentially immunizing a patentee from liability when it in good faith publicizes allegations of infringement of its patent. *See Dominant Semiconductors Sdn. Bhd. v. Osram GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008). Xitronix cites an exception to this rule available when the patent holder has acted in bad faith in asserting its allegations. *Id.* Although Xitronix could have attempted to avail itself of this exception in the federal lawsuit, arguing then as it does now that KLA-Tencor's bad-faith allegations waived its immunity from claims arising from attempts to enforce its patent rights, *see Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999), Xitronix submits that applicable res judicata principles did not require it to previously assert its tort claims because they are "separate from and independent of the infringement issues litigated below" and are not based on the "same nucleus of operative facts," *see In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999).

Where, as here, the prior suit was decided in federal court, federal law controls the determination of whether res judicata will bar a later state-court proceeding. *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 718 (Tex. 1990). Under federal law, the doctrine of res judicata will apply if (1) the parties are identical in both suits, (2) the prior judgment is rendered by a court of competent jurisdiction, (3) there is a final judgment on the merits, and (4) the same claim or cause

5

of action is involved in both cases.[4] *Southmark*, 163 F.3d at 934. There is no dispute that the first three requirements are met.

To determine whether two suits involve the same claim under the fourth element, the Fifth Circuit utilizes the "transactional test" espoused by the Restatement (Second) of Judgments, Section 24. *Id.* Under that test, the "critical issue is whether the two actions under consideration are based on 'the *same nucleus of operative facts*.'" *Id.* (quoting *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990)). In this inquiry, we look to the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies. *Nilsen v. City of Moss Point*, 701 F.2d 556, 564 (5th Cir. 1983) (en banc). The "same claim" embraces "all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction (or a series of connected transactions)." *Id.* at 560 n.4 (quoting Restatement (Second) of Judgments, § 24, comment a). Additionally, res judicata bars not only all claims that were actually adjudicated but also those that "*could have been* advanced in support of the cause of action on the occasion of its former adjudication." *Id.* at 560.

A prior judgment's preclusive effect extends to all rights of the plaintiff "with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] transaction arose." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395-96 (5th Cir. 2004). What factual grouping constitutes a "transaction" or a "series of transactions" is determined by weighing various factors such as (1) whether the facts are related in time, space, origin, or motivation and form a convenient trial unit, and (2) whether treatment of the facts as one unit would conform to the

---

[4] Although we must apply federal principles of res judicata, we note that the principles are the same under Texas law. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630-31 (Tex. 1992).

6

parties' expectations of business understanding or usage. *Id.*; *see also* Restatement (Second) of Judgments, § 24, comment a (noting "present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff [and] regardless of the number of primary rights that may have been invaded").

Applying the transactional test to this lawsuit, we conclude that the rights and remedies Xitronix now seeks to enforce arise from the same transaction or series of transactions that gave rise to its first lawsuit: KLA-Tencor's false allegations that Xitronix was infringing its patents. Although Xitronix complains in this lawsuit of KLA-Tencor's publication of its allegations of Xitronix's patent infringement to a particular audience (Sematech) at a particular time (pre-anticipation of litigation) that it did not specifically complain about in the first lawsuit, nevertheless the nucleus of operative facts in both lawsuits involves the circumstances surrounding KLA-Tencor's attempts to obtain and enforce the '441 and '690 patents. The dates of KLA-Tencor's alleged publications of Xitronix's alleged infringement—first to Sematech and Price and then to the public generally in the form of KLA-Tencor's counterclaims in the federal lawsuit—and the extent of KLA-Tencor's knowledge about the validity of its patents are sufficiently related in time, space, origin, and motivation to be considered part of the same transaction, especially considering Xitronix's antitrust allegations.

We also conclude that the facts supporting Xitronix's tort claims against KLA-Tencor, including those relevant to KLA-Tencor's knowledge about prior technology and the validity of its patent claims, would have formed a convenient trial unit with many of the facts presented in

the federal lawsuit. Indeed, much of the determination of whether KLA-Tencor acted in bad faith would turn on whether the patent claims were in fact invalid—an issue that was central to the trial in the first litigation.

Finally, Xitronix's federal complaint pleaded specific facts supporting its allegations of antitrust and deceptive conduct in connection with KLA-Tencor's attempts to enforce its patents; accordingly, it would not be a stretch to conclude that the parties' business expectations might encompass a lawsuit and any actionable claims, including torts, arising from such conduct. We conclude that Xitronix's business-tort claims arise from the same transaction or series of transactions as its claims in the first lawsuit.[5]

Furthermore, we conclude that Xitronix could have advanced its tort claims in the first lawsuit because it had access to the evidence on which it seeks to rely in this action and could have amended its pleadings to include the tort claims. *See In re Paige*, 610 F.3d 865, 873 (5th Cir. 2010) (res judicata inquiry includes additional step of determining whether previously unlitigated claims "could or should have been asserted in the prior proceeding"). Xitronix admits that it "became aware of KLA's foreknowledge of invalidity" of the subject patent claims during the

---

[5] We also reject Xitronix's argument that a limited exception created by the U.S. Supreme Court applies to the facts here. *See Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661, 669-72 (1944) (determining that defendant's antitrust counterclaim against plaintiff who had initiated patent-infringement lawsuit was permissive, not compulsory). In applying the *Mercoid* precedent, the Fifth Circuit has held that the exception is limited to instances where the gravamen of the antitrust counterclaim is "the patent infringement lawsuit initiated by the counterclaim defendant." *Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 87-88 (5th Cir. 1997). The counterclaim analysis is inappropriate when determining whether a *plaintiff* could or should have brought a particular claim in a prior action and is therefore precluded from raising the claim in a later action. The appropriate analysis under those circumstances is the Restatement's transactional test, not the *Mercoid* counterclaim exception.

ongoing discovery period in the federal lawsuit and before filing its last amended pleading in that forum. Additionally, the record reflects that during that same discovery period, Xitronix received the critical piece of evidence on which it relies in this lawsuit: an email from Sematech employee Price to other Sematech associates that, indulging every reasonable inference in Xitronix's favor, as we must do on summary judgment, *see Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997), establishes that KLA-Tencor made false representations to Price that Xitronix's technology and products were infringing KLA-Tencor's patents.

Xitronix counters that although KLA-Tencor's production of certain evidence "raised concerns of KLA's foreknowledge, the actual facts establishing the same were never disclosed by KLA until during trial," and that "an attempt to expand [the federal case] to include claims for monetary damages . . . would have fundamentally altered [the federal case] late in the game." *See In re Intelogic Trace, Inc.*, 200 F.3d 382, 388 (5th Cir. 2000) (in determining whether party could have asserted claim in earlier proceeding, court will consider whether and to what extent party had actual or imputed awareness prior to trial of real potential for claims and whether court possessed procedural mechanisms to allow it to assert such claims). Although Xitronix may not have fully formed its legal theories or been aware of all the "precise facts," the record supports the conclusion that it had knowledge of the "basic facts underlying" its tort claims during the pendency of the prior suit. *See Paige*, 610 F.3d at 874. One of the bases supporting Xitronix's patent-invalidity claim in the federal lawsuit was KLA-Tencor's alleged inequitable conduct before the Patent and Trademark Office in prosecuting the subject patents, which was supported by many of the same facts on which Xitronix seeks to rely in this lawsuit to prove KLA-Tencor's "foreknowledge" of invalidity.

9

For instance, Xitronix's live federal complaint alleged that the '441 and '690 inventors "knowingly utilized," "copied," and intentionally failed to disclose certain "prior art"[6] despite having actual knowledge of it. Furthermore, Xitronix fails to provide evidentiary support for its bare assertion that, procedurally, its tort claims could not have been raised in the federal lawsuit.

We overrule Xitronix's first issue[7] and hold that KLA-Tencor was entitled to judgment as a matter of law based on the doctrine of res judicata. Accordingly, we affirm the district court's summary judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed: August 7, 2014

---

[6] "Prior art" generally refers to "all of that knowledge that would have been available to any person having ordinary skill in the art." *Steelcase, Inc. v. Delwood Furniture Co.*, 578 F.2d 74, 79 (5th Cir. 1978). A party seeking to invalidate a patent may assert the defenses of "anticipation by prior art" or "obviousness," both of which challenge whether the invention meets the novelty requirement of the patent statutes. *See id.*; *see also* 35 U.S.C. § 102 (to be patentable, invention must be novel).

[7] We need not address Xitronix's second issue, which complains that the trial court erred in sustaining KLA-Tencor's objections to Xitronix's summary-judgment evidence, because our disposition is based on the application of legal doctrine rather than the determination of whether there are material fact issues. *See* Tex. R. App. P. 47.1.