United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 9, 2007**

Charles R. Fulbruge III
Clerk

REVISED JULY 2, 2007
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 06-40466
_____

UNITED STATES OF AMERICA

       Plaintiff - Appellant

v.

BIRNIE DAVENPORT, ET AL

       Defendants

GORDON E DAVENPORT

       Defendant - Appellee

---------------------
Appeal from the United States District Court
for the Southern District of Texas, Galveston
---------------------

Before KING, GARZA, and PRADO, Circuit Judges.

KING, Circuit Judge:

In an action to determine the federal tax liability of the estate of Birnie Davenport, the tax court held that the estate was liable for the unpaid gift tax on inter-vivos gifts of stock made by Birnie Davenport to her two nephews, Gordon Davenport and Charles Botefuhr, and her niece, Patricia Vestal. Because the estate did not pay the tax, the government now seeks to collect it from Gordon Davenport under the provisions of the Internal Revenue Code imposing liability for an unpaid gift tax on the transferee of the gift. The district court held that Gordon Davenport was not bound by the doctrine of res judicata to certain key determinations made by the tax court. Because we

agree with the government that this case involves the same nucleus of operative facts as the proceeding in the tax court, and that as a result res judicata applies, the district court's judgment is REVERSED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Birnie and Elizabeth Davenport, who were sisters, lived together much of their adult lives. Over many years, the two sisters commingled all of their earnings and assets. Pursuant to a long-standing oral agreement between the two, Elizabeth Davenport held legal title to the assets, but the sisters shared equally in the profits and losses of their investments. They considered all of their assets to be jointly owned, and their income tax returns filed over many years reflected this belief. Each of the sisters filed a separate income tax return in which she reported her earnings from her job and an equal share of profits and losses from the joint investments. The IRS accepted this split of investment income and expenses throughout numerous audits between 1965 and 1979.

The sisters' investments included stock in Hondo Drilling Company. At the time of Elizabeth Davenport's death in 1979, the sisters owned 3220 shares of Hondo stock. The sisters had two nephews, Gordon Davenport and Charles Botefuhr, and one niece, Patricia Vestal. Gordon Davenport, Botefuhr, and Vestal were appointed co-executors of Elizabeth Davenport's estate.[1]

In July 1980, slightly more than six months after her

_____

[1] Botefuhr resigned his position after a dispute concerning how to report assets held in Elizabeth Davenport's name.

sister's death, using two conveyance methods, Birnie Davenport transferred half (1610 shares) of the Hondo stock to her niece and nephews. First, she transferred 537 shares to Gordon Davenport and 536 shares to Vestal through installment sale agreements, with the stock being valued in the agreements at $804 per share.[2] Birnie Davenport reported the installment sales on her 1980 income tax return and indicated on that form that the sales were to related parties.[3] Second, Birnie Davenport transferred 537 shares to Botefuhr as an outright gift. In a signed "Family Agreement," Botefuhr promised to file the appropriate gift tax return that would report the gift made by Birnie Davenport and to pay on her behalf the gift taxes associated with his gift. Botefuhr did not fulfill this responsibility. In July 1981, Hondo Drilling Company redeemed Botefuhr's shares at $2190 per share.[4]

---

[2] This transaction also included seventy-five shares of Union Supply Company stock. Because the Hondo stock accounted for most of the transaction's value, we will refer only to the Hondo stock.

[3] In 1982, Birnie Davenport forgave the remaining balance on Gordon Davenport's and Vestal's promissory notes. Birnie Davenport's 1983 gift tax return reported forgiving the promissory notes and reported and paid $71,911 in gift tax liability.

[4] During this time, the IRS investigated the estate tax owed by Elizabeth Davenport. The investigation culminated late in 1982. The report concluded that: (1) all of the property held in Elizabeth Davenport's name, including all of the Hondo stock, should be included in her estate and (2) that Birnie Davenport's prior conveyances were ineffective. The estate settled the claim at a valuation of $2,400 per share of Hondo stock so that the IRS would abandon its claim that all of the property recorded in Elizabeth Davenport's name belonged only to her. Thus, the settlement cleared up title concerns on Birnie Davenport's half of the property.

Birnie Davenport died in 1991. Gordon Davenport, Vestal, and Botefuhr were appointed as personal representatives of her estate. While preparing Birnie Davenport's estate tax return in 1991, Corrine Childs, the Davenport sisters' long-time tax attorney, learned that Botefuhr had not filed the 1980 gift tax return or paid the taxes as promised. When Vestal and Gordon Davenport filed the estate tax return, they filed a gift tax return reporting the 1980 gift to Botefuhr at $804 per share. The estate paid a gift tax of $95,322 with the return. Botefuhr did not sign either the gift tax return or the estate tax return.

In 1992 the IRS initiated an audit of Birnie Davenport's estate tax return and 1980 gift tax return and ultimately determined that Birnie Davenport's gift of Hondo stock to Botefuhr should have been valued at $2730 per share rather than $804 per share. The large discrepancy in values created a correspondingly large gift tax deficiency, which Birnie Davenport's estate contested in tax court. See Estate of Davenport v. Comm'r, 74 T.C.M. (CCH) 405 (1997). One issue before the tax court was whether Birnie Davenport made a completed gift to Gordon Davenport, Vestal, and Botefuhr. Id. at 411. The tax court held that even though Birnie Davenport did not have legal title at the time of the transfers, she did effect inter vivos gifts to Gordon Davenport, Vestal, and Botefuhr of the Hondo stock, which the tax court valued at $2000 per share.[5]

---

[5] The tax court decided this value and incorporated by reference the parties' stipulation of fact which read:

> 38. For the purposes of this litigation, if the Court finds that Birnie Davenport

Id. at 407, 412.  A second issue before the tax court was whether the statute of limitations barred the government from recovering the gift tax due.  The tax court held that the statute of limitations did not bar assessment of gift tax liability because with respect to each of the transfers, the limitations period started running on November 7, 1991, when Vestal and Gordon Davenport filed Birnie Davenport's 1980 gift tax return.  Id. at 412.  In accordance with its findings, the court calculated the tax deficiency owed by the estate.[6]  The Tenth Circuit affirmed the tax court's decision.  Estate of Davenport v. Comm'r, 184 F.3d 1176, 1188 (10th Cir. 1999) (holding that Birnie Davenport "had a sufficient ownership interest in the Hondo stock . . . to effect inter vivos transfers of [it]" and that Birnie Davenport completed gifts during July 1980 to her two nephews and niece).

Despite the tax court's decision, the estate did not pay the taxes owed.  Because the tax court lacks the authority to enforce its judgments, the government filed the current action in the Northern District of Oklahoma against the estate and all three

---

transferred Hondo stock to Patricia Vestal, Gordon Davenport, and Charles Botefuhr in the calendar quarter ending September 30, 1980, the parties agree that the fair market value of such Hondo stock was $2,000.00 per share at the time of the transfers.

[6]  The tax court determined that the estate's deficiency in unpaid gift taxes was $822,653, that the estate owed an additional penalty of $205,663 for the failure to timely file the 1980 gift tax return, and that the estate owed interest on both the unpaid gift taxes and the penalty.  In 1998 the IRS assessed that with penalties and interest, the estate's tax bill amounted to about $5.2 million.

cousins to reduce to judgment the estate's liability and the donees' liability as transferees pursuant to I.R.C. § 6324(b). See United States v. Estate of Davenport, 159 F. Supp. 2d 1330, 1332 (N.D. Okla. 2001). The estate conceded liability. Id. The government also sought individual liability against the three cousins in their capacity as co-executors pursuant to 31 U.S.C. § 3713 for allegedly making improper distributions from the estate before paying the federal tax liabilities. Id. The district court dismissed the § 3713 claim pre-trial. Id.

Although Gordon Davenport and Botefuhr contested jurisdiction, the district court overruled their motions to dismiss for lack of personal jurisdiction. Id. at 1335. On appeal, the Tenth Circuit held that the Oklahoma district court did not have jurisdiction over Botefuhr and Gordon Davenport after dismissing the § 3713 claim. United States v. Botefuhr, 309 F.3d 1263, 1274 (10th Cir. 2002).

The case was remanded to the Oklahoma district court, which transferred Botefuhr's case to the Western District of Texas and Gordon Davenport's case to the Southern District of Texas. The case before this panel involves solely Gordon Davenport's appeal.

The Southern District of Texas ruled on multiple motions for summary judgment by Gordon Davenport and the government. First it determined that the statute of limitations barred assessment of the gift tax on the imputed gift arising from the July 1980 installment sale, but that the statute of limitations did not bar assessment of the gift to Botefuhr. Second, it held that although res judicata and collateral estoppel bound Gordon

Davenport to the tax court's finding that he was a donee, neither doctrine established the value of the gift to him (the Hondo stock) or the amount of his liability. Finally, the district court held that the government failed to provide any evidence on damages, an essential element of its claim, and it granted summary judgment against the government. The government now appeals.

## II. DISCUSSION

The Internal Revenue Code imposes tax liability "on the transfer of property by gift." I.R.C. § 2501(a). The definition of a gift includes transfers of property for "less than an adequate and full consideration in money or money's worth." I.R.C. § 2512. The donor, as the party who makes the gift, bears the primary responsibility for paying the gift tax. See I.R.C. § 2502(c) ("The tax imposed by 2501 shall be paid by the donor."). When, as here, the donor dies before paying the gift tax owed, the personal representative of the estate is responsible for paying the tax out of the estate, as a debt against the donor's estate. Treas. Reg. § 25.2502-2. The donee may also be held personally liable for the full amount of any unpaid gift tax pursuant to 26 U.S.C. § 6324(b).[7] Although the donee's liability is limited to the value of the gift he received from the donor, he may be forced to pay more than the gift tax attributable to his gift. § 6324(b); see also 14 EDWARD J. SMITH, MERTENS LAW OF FEDERAL INCOME TAXATION § 53:42 (2004). Thus, Gordon

---

[7] Section 6324(b) states: "If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift." I.R.C. § 6324(b).

Davenport is liable for all the gift tax owed by the estate for 1980, up to the value of the gift he received.

The government seeks to collect unpaid gift taxes owed by the Birnie Davenport estate from Gordon Davenport pursuant to the transferee liability provision of I.R.C. § 6324(b). The government argues that the tax court's decision is res judicata as to the liability of Gordon Davenport, and that accordingly, Gordon Davenport may not relitigate the value of the Hondo stock or whether the statute of limitations expired on the gifts to Gordon Davenport, Vestal, and Botefuhr.

The term "res judicata" is often used to describe two discrete preclusive doctrines: res judicata and collateral estoppel.[8] Baker v. Gen. Motors Corp., 522 U.S. 222, 233 n.5 (1998). These doctrines "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980). Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153 (1979). The bar prevents relitigation of all "issues that were or could have been raised in [the previous] action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). In contrast, under the doctrine of collateral estoppel, "the second action is upon a different cause of action and the judgment in

---

[8] Res judicata is also known as claim preclusion, and collateral estoppel as issue preclusion.

the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n.5 (1979).

This court reviews the res judicata effect of a prior judgment de novo because it is a question of law.[9] Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 571 (5th Cir. 2005). For res judicata to apply, the following four-part test must be satisfied: (1) the parties must be either "identical or in privity; (2) the judgment in the prior action [must have been] rendered by a court of competent jurisdiction; (3) the prior action must have been concluded to a final judgment on the merits; and (4) the same claim or cause of action [must have been] involved in both actions." In re Southmark Corp., 163 F.3d 925, 934 (5th Cir. 1999); see also 15 ELIZABETH K. BERMAN, MERTENS LAW OF FEDERAL INCOME TAXATION § 60:32 (2000).

This court determines whether two suits involve the same claim or cause of action by applying the transactional test of the Restatement (Second) of Judgments, § 24. Petro-Hunt, L.L.C. v. United States, 365 F.3d 385, 395 (5th Cir. 2004). Under the transactional test, our inquiry focuses on whether the two cases under consideration are based on "the same nucleus of operative

---

[9] Gordon Davenport contends that the government acknowledged before the district court that res judicata applies only to the estate's liability, and not his donee liability or the valuation of the stock. A review of the government's response to Gordon Davenport's second motion for summary judgment and its cross-motion for partial summary judgment regarding valuation indicates that the government argued, inter alia, that res judicata bound Gordon Davenport to the tax court's determination of the gift tax due. The government did not waive a res judicata argument.

facts." In re Southmark Corp., 163 F.3d at 934 (quoting In re Baudoin, 981 F.2d 736, 743 (5th Cir. 1993)). The nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, defines the claim. Agrilectric Power Partners, Ltd. v. Gen. Elec. Co., 20 F.3d 663, 665 (5th Cir. 1994). If the cases are based on the same nucleus of operative facts, the prior judgment's preclusive effect "extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" Petro-Hunt, 365 F.3d at 395 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(1)). Generally, "[t]he tax liability of a particular tax for a particular taxable year" is a single cause of action. 15 ELIZABETH K. BERMAN, MERTENS LAW OF FEDERAL INCOME TAXATION § 60:33 (2000).

The first three elements of res judicata are not contested by the parties. As transferee, Gordon Davenport was in privity with a party to the tax court proceeding, Birnie Davenport's estate, the transferor. See Baptiste v. Comm'r, 29 F.3d 1533, 1539 (11th Cir. 1994) ("[I]t is well settled that a transferee is in privity with his transferor for purposes of the Internal Revenue Code."); First Nat'l Bank of Chicago v. Comm'r, 112 F.2d 260, 262 (7th Cir. 1940)(same). Indeed, the tax liability of the donor and donee are inseparable. A prior decision determining the liability of the donor binds the donee. 14 EDWARD J. SMITH, MERTENS LAW OF FEDERAL INCOME TAXATION § 53:6 (2004). And the tax court, a court of competent jurisdiction, rendered final judgment

on the merits.[10]

The parties differ as to whether the fourth element of res judicata is satisfied:  whether this case involves the same cause of action as the tax court proceeding.  The district court, in its res judicata analysis, held that the tax court proceeding involved different operative facts than this case.  The district court determined that the tax court case involved a deficiency notice against the estate itself and involved distinct facts relating to Birnie Davenport's ownership interests, donative intent, and the estate's ultimate gift tax liability, but that this case involves facts relating to donee liability and the statute of limitations under § 6324(b).  The government contends, however, that the district court improperly focused on the facts litigated, as would be proper under the doctrine of collateral estoppel, rather than the operative facts of the case.

The district court's focus was improper because it looked to the legal theories advanced, forms of relief requested, and types of rights asserted.  See Agrilectric Power Partners, Ltd., 20 F.3d at 665.  The operative facts in this case and the tax court case are identical.  Both cases are based on the same two transactions and factual events: (1) the July 1980 installment

---

[10]  The final judgment element does not require contested litigation.  "An agreed judgment is entitled to full res judicata effect."  United States v. Shanbaum, 10 F.3d 305, 313 (5th Cir. 1994) (holding that an agreed decision in the tax court prevented the application of the innocent spouse rule in an action to enforce the tax court judgment under res judicata); see also Matter of W. Tex. Mktg Corp., 12 F.3d 497, 500-01 (5th Cir. 1994) (stating that a settlement agreement between the IRS and the taxpayer incorporated into a judgment must be given full res judicata effect).

sale of the Hondo stock from Birnie Davenport to Vestal and Gordon Davenport and (2) the July 1980 gift of the Hondo stock to Botefuhr. The tax court was required to decide the value of the stock to calculate the tax owed by the estate. Accordingly, under the transactional test the same cause of action is involved in both cases, and the district court improperly focused on what was actually litigated rather than the operative facts.

Our decision that the same cause of action is involved is consistent with the decisions of the Eighth and Eleventh Circuits that a transferee cannot relitigate the tax due after a prior court had already determined the estate's tax liability. See Baptiste v. Comm'r, 29 F.3d 1533, 1539 (11th Cir. 1994); Baptiste v. Comm'r, 29 F.3d 433, 436 (8th Cir. 1994). The Baptiste cases involved two brothers; Gabriel, residing in Nebraska, and Richard, residing in Florida. See id. Each brother received $50,000 as a beneficiary of his father's life insurance policy. Baptiste, 29 F.3d at 434. The IRS determined that the estate owed a deficiency in estate tax, and after the estate contested that deficiency, the IRS and the estate agreed to the estate tax owed. Id. The tax court entered a stipulated decision of the tax due from the estate, but the estate never paid the tax, prompting the government to attempt to collect the tax from the Baptiste brothers as transferees.[11] Id.

---

[11] Although the Baptiste cases involved transferee liability with regard to an unpaid estate tax, transferee liability of estate tax functions the same as transferee liability of gift tax. Section 6324(a) of the Internal Revenue Code states that if the estate tax is not paid when due, then the transferee "who receives, or has on the date of the decedent's death, property included in the gross estate . . . to the extent

Although Gabriel Baptiste did not contest that he was personally liable as a transferee under I.R.C. § 6324(a)(2), he attempted to contest the amount of the underlying estate tax liability in a separate proceeding in the tax court.  The effort was unsuccessful, the tax court holding that res judicata applied to bar him from contesting the amount of the estate tax liability.  Id. at 435. On appeal, Gabriel Baptiste argued that res judicata did not apply to bind him to the tax court's decision regarding the existence and amount of estate tax imposed for purposes of determining his transferee liability pursuant to § 6324(a)(2).  Id.  The Eighth Circuit held that the causes of action in the two cases were identical, that is "the transferor and Gabriel[] [Baptiste's] respective obligation to pay the estate tax imposed on the transfer of the decedent's estate." Id. at 436.  Because the causes of action were identical, res judicata bound Gabriel Baptiste to the tax court's decision for purposes of determining both the transferee's obligation to pay the estate tax and the amount of the transferee's liability.  Id. The court reasoned that the donee's liability was determined by the amount of the estate's tax.  See id.

The Eleventh Circuit ruled similarly in the challenge brought by Richard Baptiste.  Baptiste, 29 F.3d at 1539.  Richard Baptiste wanted to relitigate the valuation of the property, but the court of appeals denied him that opportunity.  Id.  The Eleventh Circuit held that "[t]he fact that his purpose is to

_____

of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax."

decrease his personal liability, rather than in the interest of the estate, is of no moment.  The estate's liability under section 2002 and Baptiste's liability under section 6324(a)(2) both embrace the same determination-the amount of estate tax imposed by chapter 11."  Id.

Gordon Davenport argues that his case can be distinguished from the Eighth and Eleventh Circuits' decisions because unlike the Baptistes, who challenged the estate's liability, he contests the extent of his own transferee liability.  He contends that because the Baptiste brothers received cash, the extent of the donee's liability was fixed at the amount of the cash received and that the value of cash cannot be questioned in the way that a stock's value can be.  He argues that because the Baptiste brothers could not relitigate the value of the cash (and thus the extent of their liability), they attempted to relitigate the underlying estate's liability as a means of reducing their own transferee liability.

This argument does not succeed because the value of the Hondo stock was a fundamental part of calculating the tax due in this case.  The tax court's determinations of the value of the stock and the tax due are not separable.  Once a court determines the tax liability of the transferor, "the decision is res judicata of the liability with regard to the transferee for the same tax if transferee status can be established."  14 EDWARD J. SMITH, MERTENS LAW OF FEDERAL INCOME TAXATION § 53:31 (2004).  The tax court concluded Gordon Davenport was a transferee, and the Tenth Circuit affirmed that decision.

Gordon Davenport also argues that we should follow the lead of the Tenth Circuit in Botefuhr, a case in which the facts were identical to those in this case. In Botefuhr, the government attempted to assert transferee liability against Vestal to collect the tax owed by Birnie Davenport's estate. 309 F.3d at 1275. The question before the Tenth Circuit was whether Vestal was bound by the estate's stipulation during the tax court proceedings that the value of the Hondo stock was $2000 per share. Id. at 1281. Vestal argued that the stipulation was limited to the tax court proceeding and did not preclude litigation of that issue in the subsequent proceeding. Id. The Tenth Circuit acknowledged that confusion existed regarding whether the preclusion issue should be analyzed under the principles of collateral estoppel or res judicata. Id. at 1281-82. It concluded that "this matter must be evaluated as an assertion of [collateral estoppel], rather than [res judicata]. [Res judicata] is inapplicable to the situation here presented." Id. The Tenth Circuit offered no other insight into its conclusion that res judicata did not apply.[12]

Although we have the utmost respect for the Tenth Circuit, we decline to follow its decision in Botefuhr that res judicata does not apply; instead, we side with the Eighth and Eleventh Circuits in the Baptiste cases. As discussed above, each element of res judicata has been satisfied in the instant case.

---

[12] Under the doctrine of collateral estoppel, the Tenth Circuit ultimately held that Vestal was not precluded from relitigating the value of the Hondo stock because it had never been litigated on the merits. United States v. Botefuhr, 309 F.3d 1263, 1283 (2002).

Accordingly, the doctrine of res judicata applies to preclude Gordon Davenport and the government from litigating matters arising from the same nucleus of operative facts that were or could have been raised in the previous proceeding.  See Moitie, 452 U.S. at 398.

Finally, Gordon Davenport argues that the language of the stipulation concerning the stock value was limited to the tax court proceeding and in effect the government waived res judicata with regard to that issue.  His argument fails because the language does not expressly waive res judicata or express any intent regarding future proceedings.  The stipulation merely states the parties' intent with regard to the proceeding in the tax court: that the Hondo stock should be valued at $2000 per share.

In conclusion, we hold that all elements of res judicata have been satisfied.  Accordingly, res judicata binds Gordon Davenport to the value of the Hondo stock established in the tax court proceeding.  The doctrine also precludes him from relitigating other issues that were or could have been litigated in that suit, such as whether the statute of limitations barred assessment of the gift tax on either the gift to Botefuhr or the gifts involved in the installment sale transactions.  Because we hold that res judicata applies, we do not address the government's remaining arguments.

**III. CONCLUSION**

For the reasons discussed above, we REVERSE the district court's judgment and REMAND for further proceedings.