# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 28, 2010

Lyle W. Cayce
Clerk

No. 08-10995

IN THE MATTER OF: ROBERT WARREN PAGE,

Debtor

KENT DAVID RIES, TRUSTEE,

Appellant

v.

ROBERT WARREN PAIGE,

Appellee

Appeal from the United States Bankruptcy Court
for the Northern District of Texas

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

A panel of this court granted the unopposed motion of plaintiff and chapter VII trustee Kent Ries ("Ries") for leave to appeal directly to this court pursuant to 28 U.S.C. § 158(d)(2)(A)(iii) after the bankruptcy court granted summary judgment to the debtor, Robert Paige ("Paige"). *In re Paige*, Bankr. No. 04-20147-RLJ-7, Adv. No. 07-02015, 2008 WL 2938545 (Bankr. N.D. Tex. July 23, 2008). Because we agree with the bankruptcy court that Ries's claims against Paige are barred by res judicata, we AFFIRM.

No. 08-10995

## I. Background and Procedural History

The parties do not dispute the facts that give rise to this appeal. In early 2004, Paige filed a voluntary petition for relief under chapter VII of the Bankruptcy Code. Over the next several years, the case spawned numerous lawsuits and other contested matters, which the parties involved resolved by a global settlement agreement ("Settlement") entered and approved by the bankruptcy court in July 2006. As part of the Settlement, the bankruptcy estate received, effective as of the date of the filing of the bankruptcy petition, the entire interest in Bobladon, Ltd. ("Bobladon"), an entity which was previously controlled by Paige, his wife and affiliated entities. Under the terms of the Settlement, Bobladon would hold, among other assets, nineteen classic cars and motorcycles after selling eleven vehicles back to Paige. After the Settlement's closing, Ries, as trustee of the estate, retained the services of an auction house to liquidate the remaining vehicles. In September 2006, the auction house informed Ries that four vehicles were missing from Bobladon's inventory. Ries later found out that Paige, without being authorized, had auctioned off the cars (through a different auction house) well before the Settlement's closing, for a gross sales price of $648,500.00.

On November 16, 2006, Ries filed a motion seeking to compel Paige to turn over the missing vehicles or for the bankruptcy court to retrospectively approve the unauthorized sale and compel Paige to turnover the sales proceeds, and to additionally sanction Paige for the unauthorized sale ("Motion to Compel"). In response to the Motion to Compel, Paige admitted the unauthorized disposition but denied that he intended to profit from, or that the estate was damaged by, the auction.

Upon the parties' joint motion the bankruptcy court, on December 15, 2006, approved the sale of the four vehicles and the turnover of the sale proceeds of $648,500.00 to the estate. In its later March 28, 2007 Memorandum Opinion

2

No. 08-10995

and Order addressing Ries's request for sanctions, the bankruptcy court determined that Paige's unauthorized sale of the four vehicles was "intentional, deceitful, and done in bad faith," *In re Paige*, 365 B.R. 632, 639 (Bankr. N.D. Tex. 2007), and warranted sanctions in the amount of $80,000, *id.* at 640. The court explained that it would "not base either its authority to sanction or the amount of the sanctions on potential substantive causes of action held by the trustee." *Id.* at 637. Instead, its authority to sanction was based on "the bankruptcy court's inherent power to sanction" under 11 U.S.C. § 105, *id.* at 637-38, and the sanction of $80,000 was "the minimum amount necessary to cover both the additional fees and expenses by the Trustee in recovering the proceeds from the four cars and to deter similar future conduct by Paige," *id.* at 640. Neither party appealed the bankruptcy court's sanctions order.

On August 10, 2007, Ries filed the adversary proceeding at issue in this appeal, seeking to recover damages the bankruptcy estate allegedly suffered from Paige's unauthorized sale of the cars, asserting causes of action against Paige "for fraud and misrepresentation, fraud in the inducement, breach of warranty, and conversion," *Paige*, 2008 WL 2938545, at *1, and requested, inter alia, "the following forms of relief: revocation of an order dismissing a prior adversary proceeding, actual and punitive damages, rescission of a settlement agreement between [Ries] and Paige . . ., and a revocation of the discharge that was previously granted to Paige in his bankruptcy case," *id.* The bankruptcy court, however, granted Paige's motion for summary judgment and held that Ries's claims were barred by res judicata because they arose from the same facts that gave rise to Paige's earlier Motion to Compel. *See id.* at 2. The bankruptcy court also denied Ries's subsequent Rule 9023 Motion for a New Trial, or in the Alternative, Rule 9023 Motion to Alter or Amend Judgment.

On October 3, 2008, Ries filed an unopposed petition for leave to appeal the bankruptcy court's decision pursuant to 28 U.S.C. § 158(d)(2)(A), in which

3

both parties, in accordance with 28 U.S.C. § 158(d)(2)(A)(iii), certified that "an immediate appeal . . . will materially advance the progress of the case or proceeding . . . because the main bankruptcy case has been pending since February 6, 2004, the Estate holds substantial assets, and the main proceeding may cannot [sic] be closed until a final determination is made resolving the Adversary Proceeding." On October 20, 2008, a panel of this court determined that the parties' certification that "an immediate appeal . . . will materially advance the progress of the case or proceeding" satisfied 28 U.S.C. § 158(d)(2)(A)(iii) and granted Ries's unopposed motion for leave to appeal.

## II. Res Judicata

Ries argues that the bankruptcy court erred in granting summary judgment on a finding that res judicata barred the current action. "This court reviews the grant of summary judgment *de novo*, applying the same standards as the [bankruptcy] court." *Osherow v. Ernst & Young, LLP* (*In re Intelogic Trace, Inc.*), 200 F.3d 382, 386 (5th Cir. 2000); *see also United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine issue of material fact exists where the summary judgment evidence would support a reasonable jury's verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All doubts are to be resolved in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

No. 08-10995

## A.    Res Judicata Test

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).[1]  Under this court's  four-prong test for res judicata, "'the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.'"[2]  *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc) (quoting *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir. 1979)); *see also, e.g.*, *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005); *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004); *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999).  Additionally, where the four elements of the res judicata test are met, we must also determine whether "the previously unlitigated claim could or should have been brought in the earlier litigation." *D-1 Enters., Inc. v. Commercial State Bank*, 864 F.2d 36, 38 (5th Cir. 1989); *see also In re Howe*, 913 F.2d 1138, 1145 (5th Cir. 1990); *Intelogic Trace*, 200 F.3d at 388.

## B.    Res Judicata Application

### 1.    *Identity of Parties*

The bankruptcy court noted that "the only real debatable issue here concerning the application of res judicata is whether the same cause of action is

---

[1] Res judicata applies with equal force in the bankruptcy context.  *See, e.g., In re Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993) ("This Court has [long] recognized the  important interest in the finality of judgments in a bankruptcy case.").

[2] "In the absence of a federal governing statute or rule, the res judicata effect of a federal judgment, such as those asserted here, is determined by federal common law." *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 n.12 (5th Cir. 2007) (citing *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001)).

No. 08-10995

involved both here and in the Motion for Sanctions." *Paige*, 2008 WL 2938545, at *4. We agree. However, in his reply brief, Ries argues for the first time that the estate was not actually a party to the sanctions proceeding and that therefore, "the element of res judicata requiring the parties to be identical or in privity has not been met." As we generally do not consider arguments raised for the first time on appeal, Ries's argument is waived. *See, e.g., State Indus. Prods. Corp. v. Beta Tech. Inc.*, 575 F.3d 450, 456 (5th Cir. 2009); *Cmty Care, LLC v. Leavitt*, 537 F.3d 546, 549 n.4 (5th Cir. 2008); *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 347 n.5 (5th Cir. 2008).

But even if we were to consider Ries's argument, Ries does not, and cannot, dispute that the estate and Paige were parties to the proceeding that led to the bankruptcy court's sanctions against Paige. Ries, as trustee, filed the Motion to Compel and prosecuted the motion for the benefit of the bankruptcy estate, which ultimately recovered $80,000.00 in monetary sanctions. Moreover, Ries's prosecution of the estate's Motion to Compel and participation in the proceedings made the estate a party to the proceedings, even had it not been named as such. In *Southmark Properties. v. Charles House Corp.*, we held that the president and shareholder of a real estate company in Chapter 10 reorganization became a party to the reorganization proceedings in federal court, although not "formally named" as such, by "participating" and being "actively involved in the reorganization proceedings." 742 F.2d 862, 867-68, 870 (5th Cir. 1984). On that basis, because he had been a party to the earlier reorganization proceeding, we held that he was barred by res judicata from challenging the transfer of the company's real property to its former lender as part of the Chapter 10 reorganization in a later state court action (arising from the same conduct) he brought against the former lender and new owner of the company's real estate holdings. *Id.* at 870. The present case is similar in principle: Ries, on behalf of the estate, actively pursued the sanctions against Paige by filing

with the bankruptcy court his motion for sanctions, eventually netting the estate $80,000.  Therefore, Ries's active participation in the sanctions proceeding, on behalf of the estate, made the estate a party to the proceeding, even if it had not been explicitly named a party in the proceeding.

## 2.    *Final Judgment on the Merits by a Court of Competent Jurisdiction*

The parties agree that the second prong (prior judgment by a court of competent jurisdiction) and the third prong (final judgment on the merits) of the res judicata test are satisfied.  Moreover, it is beyond doubt that the bankruptcy court's March 28, 2007 Memorandum Opinion and Order constituted a final judgment on the merits because it was not appealed from.  *See*, *e.g.*, *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1293 (5th Cir. 1992) (holding that an unappealed order is a final judgment on the merits for res judicata purposes); *In re Williams*, 298 F.3d 458, 461-62 (5th Cir. 2002) (holding that an unappealed contempt order by a bankruptcy court is a final judgment on the merits for res judicata purposes);  *In re Baudoin,* 981 F.2d at 742 ("[o]rder allowing a proof of claim is . . . a final judgment" for res judicata purposes); *see also* 18A Charles Alan Wright et al., *Federal Practice and Procedure* 134 (2d ed. 2002) ("[I]t is clear that an entire claim may be precluded by a judgment that does not rest on any examination whatever of the substantive rights asserted."). Further, the order was rendered by a court of competent jurisdiction given that the bankruptcy court had jurisdiction to issue the sanctions order.  *See* 28 U.S.C. § 1334(a)-(b); *id.* § 157(b)(1).

## 3.    *Same Cause of Action*

Under the fourth prong of the res judicata inquiry, we determine whether the sanctions proceeding and Ries's newly asserted fraud claims in the current adversary proceeding involve the same cause of action.  *E.g.*, *Nilsen*, 701 F.2d at 559.  To that end, this court applies the transactional test of Section 24 of the Restatement (Second) of Judgments.  *See, e.g.*, *id.*; *Southmark Props.,* 742 F.2d

at 870-71; *Intelogic Trace*, 200 F.3d at 386.  Under that test, the preclusive effect of a prior judgment extends to all rights the original plaintiff had "'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'"  *Petro-Hunt*, 365 F.3d at 395-96 (quoting Restatement (Second) of Judgments § 24(1) (1982)).  "What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  *Id.* at 396 (quoting Restatement (Second) of Judgments § 24(2) (1982)).  "The critical issue under this determination is whether the two actions under consideration are based on 'the same nucleus of operative facts,'" *Intelogic Trace,* 200 F.3d at 386 (quoting *Howe*, 913 F.2d at 1144), "rather than the type of relief requested, substantive theories advanced, or types of rights asserted," *Davenport*, 484 F.3d at 326.  *See also Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402 (5th Cir. 2009).

The bankruptcy court determined that "[t]he [damages] claims here [we]re based on the same factual episode - Paige's wrongful taking and selling of the four classic automobiles without the Trustee's authorization" and noted that the Restatement (Second) of Judgments, Section 24, comment c explains: "[t]hat a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims . . . [even where] several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *Paige*, 2008 WL 2938545, at *5 (quoting Restatement (Second) of Judgments § 24 cmt. c (1982)).  On that basis it held that "[t]he causes of action in the present adversary [proceeding] [we]re based on the same transaction as the Motion for Sanctions." *Id.*

No. 08-10995

We agree with the bankruptcy court's analysis and conclusion. Ries argues that the current action does not meet the transactional test because the claims he now asserts are inherently substantive in nature as opposed to the earlier "procedural sanctions awards." But, as the bankruptcy court correctly pointed out, we have previously rejected such a distinction because "[m]aking a determination of whether the same nucleus of operative facts is present" revolves around "'the *factual* predicate of the claims asserted.'" *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007) (emphasis added) (quoting *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992)). Therefore, as the bankruptcy court noted, "the type of relief requested, substantive theories advanced, or types of rights asserted" is not controlling for purposes of the transactional test. *Davenport*, 484 F.3d at 326. This is true even where "several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability . . . ." Restatement (Second) of Judgments § 24 cmt. c (1982); *see also Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994) ("The substantive theories advanced, forms of relief requested, types of rights asserted, and variations in evidence needed do not inform this inquiry."). Against this background, we held in *Intelogic Trace,* for example, that Intelogic's malpractice action against its former Chapter 11 consultant, Ernst & Young LLP, was barred by res judicata. 200 F.3d at 385-86, 391. We found that the accounting services Ernst & Young had previously provided to Intelogic's estate constituted the "central transaction." *Id.* at 387. Those accounting services were the subject of Ernst & Young's earlier fee application. Consequently, the bankruptcy court's granting of the fee application, without objection from the estate's trustee, constituted a final judgment on the merits for res judicata purposes. We explained that "[b]y granting Ernst & Young's fee application, the bankruptcy court implied a finding of quality and value in Ernst & Young's services and that

9

the Trustee's [malpractice] claims . . . ar[o]se from Ernst & Young's alleged omissions in rendering the very same services considered by the bankruptcy court in the fee application hearing." *Id.* Analogously, Paige's unauthorized taking and selling of the four vehicles constitutes the "central transaction" of both Ries's earlier Motion to Compel and the fraud claims for damages he currently asserts. To reach its decision to impose sanctions, the bankruptcy court necessarily determined that the four vehicles Paige sold were the property of the bankruptcy estate and that Paige had taken possession of the vehicles and sold them without authorization, posing as the owner in interactions with the auction house he retained. These are the very facts at the heart of Ries's request for damages in his later adversary proceeding. His complaint states: "the Debtor had wrongfully taken and consigned the cars for sale at auction and . . . [sold] the cars . . . ." Therefore, "because the two actions under consideration are based on 'the same nucleus of operative facts,'" *id.* at 386 (quoting *Howe*, 913 F.2d at 1144), the current and the earlier proceedings arise from the same cause of action.

### 4.    *Assertion of Claims in the Prior Proceeding*

Our inquiry does not end with the four-prong test. As a last step, we must determine whether the previously unlitigated claims "'could or should have been asserted in the prior proceeding.'" *Intelogic Trace*, 200 F.3d at at 388 (quoting *Howe*, 913 F.2d at 1146 n.28); *D-1 Enters.*, 864 F.2d at 38 ("Essential to the application of the doctrine of *res judicata* is the principle that the previously unlitigated claim could or should have been brought in the earlier litigation."). Only if we determine that the claims asserted here could and should have been asserted in the earlier sanctions proceeding are Ries's claims barred by res judicata. *See, e.g.*, *Intelogic Trace*, 200 F.3d at 388. We engage in a two-step analysis: we ask first "whether and to what extent [Ries] had actual or imputed awareness prior to the [sanctions hearing] of a real potential for [the currently

No. 08-10995

asserted] claims against [Paige]"; and, second, "whether the bankruptcy court possessed procedural mechanisms that would have allowed [Ries] to assert such claims." *Id.*

We agree with the bankruptcy court that Ries was aware of "[t]he core facts - Paige's unauthorized disposition of the four cars"- and "knew the import of Paige's conduct" at the time he filed his Motion to Compel. *Paige*, 2008 WL 2938545, at \*5. Ries does not specifically address whether he was aware of the basic facts that now form the basis of his current claims, but he argues that he would have had to "speculate" with regard to what causes of action to bring at the time of the sanctions proceeding. In *Intelogic Trace*, we found that Intelogic's board had sufficient "general awareness of the real potential for claims" against Ernst & Young, although it "may not have been aware of all the precise facts," because the board had been informed of concerns regarding Ernst & Young's services but made a conscious decision to leverage this information into a reduced fee while foregoing raising the issue at the fee hearing before the bankruptcy court. 200 F.3d at 389. It is undisputed that at the time of the filing of the Motion to Compel Ries knew that Paige had made an unauthorized sale of the four vehicles, Ries had identified the four missing vehicles, he knew the auction house Paige had used for the sale and the auction at which the vehicles were sold, and he had obtained documents evidencing the sale of the vehicles to third parties. This information would have allowed Ries to file his current fraud claims at the time he brought his motion for sanctions. Thus, as in *Intelogic Trace*, Ries "may not have been aware of all the precise facts or reached a firm conclusion" on the implications of Paige's conduct as they applied to the claims he now asserts at the time he filed the Motion to Compel, but he had the necessary "awareness . . . of a real potential for claims" to satisfy step one of this analysis. 200 F.3d at 388. *See also In re Howe,* 913 F.2d at 1147 (knowledge of the basic facts underlying the claims, despite ignorance of their significance, was

11

enough to bar the subsequent claims under res judicata); *In re Smyth*, 273 F.3d 393, 2001 WL 1013183, at *4 (5th Cir. 2001) (unpublished) ("general awareness of facts that could have supported" a claim, even if no "legal conclusions" had been drawn from them, is sufficient).

We also agree with the bankruptcy court's finding that the earlier sanctions proceeding, specifically part VII of the Bankruptcy Rules applicable to adversary proceedings, would have allowed Ries to effectively litigate his current claims. *Paige*, 2008 WL 2938545, at *6. Ries argues that the sanctions proceeding would have been an inappropriate vehicle for litigating his fraud causes of action against Paige because it was merely a contested matter pursuant to Fed. R. Bankr. P. 9014, which would not have allowed him to bring his current claims for damages arising out of the unauthorized sale. However, in *Intelogic Trace*, we noted that "the nature of the proceeding [did] not automatically determine whether th[e] action [was] barred by *res judicata*." 200 F.3d at 389. We explained that the hearing by which the bankruptcy court determined to grant Ernst & Young's fee application was a contested matter pursuant to Fed. R. Bankr. P. 9014, which would not ordinarily have allowed for the assertion of a malpractice claim. *Id.* at 389-90. But we further observed that, had Intelogic objected to Ernst & Young's fee application and included a claim for malpractice with its objection, the contested matter, *viz.*, the fee application proceeding, would have become an adversary proceeding pursuant to part VII of the Bankruptcy Rules as required by Fed. R. Bankr. P. 3007. *Id.* (citing Fed. R. Bankr. P. 3007 ("If an objection to a claim is joined with a demand for relief of the kind specified in [Fed. R. Bankr. P.] 7001, [e.g., "a proceeding to recover money or property" or a "proceeding to object to or revoke a discharge,"] it becomes an adversary proceeding")). Conversion to an adversary proceeding, in turn, would have allowed Intelogic to bring its malpractice claim against Ernst & Young as it would have in regular civil litigation. *Id.*; *see also In re*

*Iannochino*, 242 F.3d 36, 48 (1st Cir. 2001); *Grausz v. Englander*, 321 F.3d 467, 474-75 (4th Cir. 2003).

Additionally, we explained that Fed. R. Bankr. P. 9014, governing contested matters, also allowed a court "'at any stage in a particular matter [to] direct that one or more of the other rules in Part VII [of the Federal Rules of Bankruptcy Procedure applicable to adversary proceedings] shall apply.'" *Intelogic Trace,* 200 F.3d at 390 (quoting Fed. R. Bankr. P. 9014). On that basis we noted that because "[u]nder [the rules governing adversary proceedings,] the bankruptcy court is to apply the Federal Rules of Civil Procedure governing discovery in adversary proceedings," "even if [Intelogic] had only informed the bankruptcy court of its concerns and not immediately sought affirmative relief for malpractice, the bankruptcy court could have stayed the fee hearing and permitted . . . discovery" pursuant to the Federal Rules of Civil Procedure for Intelogic to develop its potential claim. *Id.*; *see also Smyth*, 273 F.3d 393; 10 *Collier on Bankruptcy* ¶ 7000.01 (Alan Resnick & Henry J. Sommer eds. 15th ed. rev. 2009) ("Rule 9014 makes specific Part VII rules applicable to motions, unless the court otherwise directs, and gives the court the power and discretion to direct, at any stage, that one or more of the other rules in Part VII shall apply."). For these reasons, we held that the fee application hearing before the bankruptcy court would have provided "an effective forum for [Intelogic] to present its claims." *Intelogic*, 200 F.3d at 390.

Similarly, as he appears to have conceded at oral argument before the bankruptcy court, Ries could have brought his fraud claims at the time he filed his Motion to Compel, although that proceeding, at the time, was only a contested matter pursuant to Fed. R. Bankr. P. 9014. As in *Intelogic Trace*, had Ries asserted his fraud claims then, the bankruptcy court, pursuant to Fed. R. Bankr. P. 9014, could have directed that any of the rules governing adversary proceedings would apply (to the extent Fed. R. Bankr. P. 9014 does not make

them applicable already), allowing it to stay the proceedings relating to Ries's fraud claims and to conduct discovery in accordance with the Federal Rules of Civil Procedure. *See Intelogic Trace*, 200 F.3d at 390 (stating that the Federal Rules of Civil Procedure apply to discovery in adversary proceedings pursuant to Fed. R. Bankr. P. 7026-37). Alternatively, Ries could have asked the bankruptcy court to reserve his fraud claims for later adjudication, but he did not do so. *See Vines v. Univ of La. at Monroe*, 398 F.3d 700, 712 (5th Cir. 2005) ("'A judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion.'" (quoting *King v. Provident Life & Accident Ins. Co.*, 23 F.3d 926, 928 (5th Cir. 1994))); *see also Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002) ("*Res judicata* does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding.") (citing *D & K Props. Crystal Lake v. Mut. Life Ins. Co.*, 112 F.3d 257, 260 (7th Cir. 1997)); Restatement (Second) of Judgments § 26(1)(b) (1982) (When "[t]he court in the first action expressly reserved the plaintiff's right to maintain the second action," "the general rule of § 24 does not apply to extinguish the claims, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant. . . ."). Therefore, contrary to Ries's assertion, the initial proceeding would have allowed Ries to effectively litigate or reserve the fraud claims he currently asserts.

Because all of the requirements for res judicata have been met, the bankruptcy estate's fraud claims that Ries now asserts are barred unless, as Ries argues, Paige is judicially estopped from asserting the res judicata defense. We address this argument below.

### III. Judicial Estoppel

Ries argues that even if res judicata applies, Paige is judicially estopped from invoking the res judicata defense because Paige's counsel took the position

in his oral argument at the sanctions hearing, contrary to his present argument, that Ries would be able to pursue his fraud claims in a subsequent adversary proceeding.

"Judicial estoppel is an equitable doctrine that 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'" *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 347 (5th Cir. 2008) (quoting *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)).[3]  In *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.*), we described the doctrine's purpose and defined its requirements as follows:

> The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.  Importantly, because judicial estoppel is designed to protect the judicial system, not the litigants, detrimental reliance by the party opponent is not required. Generally, judicial estoppel is invoked where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. This circuit, however, has recognized three particular requirements: (1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent.

374 F.3d 330, 335 (5th Cir. 2004) (internal citations and quotation marks omitted).[4]

---

[3] "Because judicial estoppel was raised in the context of a bankruptcy case . . . we apply federal law." *Browning Mfg. v. Mims  (In re Coastal Plains, Inc.*), 179 F.3d 197, 205 (5th Cir. 1999).

[4] Typically, judicial estoppel focuses on the positions a party has taken in its pleadings, *see Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988), but may also include counsel's statements in open court, *see Ergo Science, Inc. v. Martin*, 73 F.3d 595, 600 (5th Cir. 1996).

No. 08-10995

The bankruptcy judge in the present case, who also presided over the earlier sanctions proceeding, concluded that the facts here did not warrant judicial estoppel because Paige's counsel did not make any intentional self-contradictory statement which he has used as a means to gain an unfair advantage in the present adversary proceeding. *See Paige*, 2008 WL 2938545, at *8-9. The oral argument statements at the sanctions hearing before the bankruptcy court revolved around two different contentions. Ries's counsel argued that he should be able to in effect recover fraud damages by way of the sanctions to be imposed on Paige by the bankruptcy court. Paige's counsel, on the other hand, contended that fraud damages would have to be pursued in an adversary proceeding and were not part of the sanctions proceeding. Paige's counsel's argument was made in the haste of responding to Ries's counsel's oral argument conflating the different measures for sanctions and for fraud damages. Considering the statements in context, the bankruptcy court concluded that (1) Paige's counsel did not represent to the bankruptcy court that Ries should be able to pursue his fraud damages claims in a subsequent adversary proceeding; he merely contended that damages for fraud could not be awarded as part of the sanctions imposed in the sanctions proceeding; (2) the bankruptcy court did not accept Paige's counsel's argument as making such a representation; and (3) Paige's counsel did not intentionally mislead the bankruptcy court or otherwise "tr[y] to play fast and loose." *Id.*

Based upon our own reading of the record, we conclude that the bankruptcy court carefully analyzed the statements made by Paige's counsel at the sanctions hearing and reasonably exercised its discretion in deciding that judicial estoppel was not warranted. Against this backdrop and given that our review of the use of judicial estoppel is for abuse of discretion only, *Hopkins*, 545 F.3d at 347, we cannot say that the bankruptcy court abused its discretion in disallowing judicial estoppel in this case.

No. 08-10995

## IV. CONCLUSION

Because the bankruptcy court properly granted Paige's motion for summary judgment, we AFFIRM.