NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**INDECT USA CORP.,**
*Plaintiff-Appellant*

**v.**

**PARK ASSIST, LLC,**
*Defendant-Cross-Appellant*

---

2024-1023, 2024-1127

---

Appeals from the United States District Court for the Southern District of California in No. 3:18-cv-02409-BEN-DEB, Senior Judge Roger T. Benitez.

---

Decided:  January 7, 2026

---

PAUL V. STORM, Foley & Lardner LLP, Dallas, TX, argued for plaintiff-appellant.  Also represented by RANDY PUMMILL; MICHELLE A. MORAN, Milwaukee, WI.

TOD MATHEW MELGAR, Lippes Mathias LLP, New York, NY, argued for defendant-cross-appellant. Also argued by SCOTT STIMPSON, Sills Cummis & Gross PC, New York, NY.

---

Before HUGHES, STARK, *Circuit Judges*, and WANG, *District Judge*.[1]

STARK, *Circuit Judge*.

Park Assist LLC ("Park Assist") is the owner of U.S. Patent No. 9,594,956, (the "'956 patent") directed to methods of using camera-based technology for the management of parking spaces. In 2018, Indect USA Corp. ("Indect") sued Park Assist, seeking declaratory judgments that it and its customers do not infringe the '956 patent and that the patent's claims are invalid. Indect further alleged that Park Assist engaged in unfair competition under the Lanham Act by threatening to sue Indect's customers and bringing and maintaining suit against one such customer, the San Diego County Regional Airport Authority ("Airport"). Park Assist responded with counterclaims alleging Indect directly infringed and induced others to infringe the '956 patent.

Neither party obtained all the relief it sought in the district court. Following a jury trial and post-trial motions, the district court entered a declaratory judgment that Indect did not infringe the '956 patent, but denied Indect's requests for judgments of invalidity and unfair competition. Park Assist's requests for declaratory judgments of infringement were denied. Both parties now appeal. While we agree with the district court on many of the disputed issues, and largely affirm, we vacate and remand for further proceedings.

I

Park Assist's '956 patent, entitled "Method and system for managing a parking lot based on intelligent imaging,"

---

[1] Honorable Nina Y. Wang, District Judge for the United States District Court for the District of Colorado, sitting by designation.

teaches a camera-based parking lot management system capable of determining whether a parking space is occupied, and methods of using such systems. J.A. 17397.[2] The disclosed method provides a means for determining whether a parked car is parked in a parking space and whether such car is authorized to use that space.

Representative claim 1 of the '956 patent recites:

A method of managing a plurality of parking spaces, comprising:

(a) monitoring a parking space with an imaging device of an imaging unit;

(b) detecting, by said imaging unit, occupancy of said parking space;

(c) assigning said parking space, in which said occupancy was detected, an occupied status . . .;

(d) obtaining . . . as a result of said . . . occupied status, a single high resolution image of a vehicle occupying said parking space . . .;

(e) storing at least part of said high resolution image . . .;

(f) displaying a thumbnail image of said parking space on a graphic user interface (GUI) . . .;

(g) deciding whether said occupied status is incorrect, based on a visual review of said thumbnail image on said GUI;

_____

[2] "J.A." refers to the Non-Confidential Joint Appendix filed by Indect (ECF No. 34).

> (h) correcting said occupied status . . . if said parking space shown in said thumbnail image is vacant . . .;
>
> (i) extracting from said high resolution image . . . a permit identifier for said vehicle, and comparing said permit identifier with at least one parking permit identification stored on said storage to determine a permit status of said parked vehicle; and
>
> (j) initiating an infringement process for said vehicle having said permit identifier that fails to coincide with at least one parking permit identification.

'956 pat. at 22:30-23:4.

Indect sells a parking system, the UPSOLUT (the "Accused System"), which Park Assist alleges infringes at least claim 1 of the '956 patent. Park Assist shared its accusations about the UPSOLUT system in letters it sent to Indect's customers and potential customers, writing, in pertinent part:

> Park Assist is aware that [Indect] ha[s] submitted a [p]roposal . . . offering to sell the INDECT UPSOLUT system. . . . The [Indect] Proposal looks to offer a system having features and functionality that if implemented . . . may infringe the '956 Patent claims. Accordingly, Park Assist . . . requests that in awarding any contracts [you] avoid implementing a system that would infringe on Park Assist's valuable intellectual property rights. . . . [F]ailure to do so will expose the seller and/or user of an infringing system to liability for actual damages, treble damages for willful[] infringement and injunctive relief against the sale or use of infringing systems.

J.A. 17330-31.

Park Assist also sued one of Indect's customers, the Airport, alleging that it infringed the '956 patent by using Indect's Accused System. That suit prompted Indect to file this action against Park Assist, seeking declaratory judgments that: (i) Indect did not infringe the '956 patent, (ii) Indect did not induce its customers to infringe the '956 patent, and (iii) the claims of the '956 patent are invalid as obvious. Indect also alleged that Park Assist engaged in unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), through its written communications to Park Assist's actual and potential customers and based on its suit against the Airport. Park Assist counterclaimed, alleging Indect directly infringed the claims of the '956 patent, induced such infringement, and would continue to induce infringement.

At summary judgment, the district court held that the claims of the '956 patent are not invalid due to indefiniteness. The case proceeded to trial, where a jury found: (i) Park Assist failed to prove Indect directly infringed claim 1 of the '956 patent, (ii) Indect failed to prove any of the claims of the '956 patent invalid due to obviousness, and (iii) Indect failed to prove Park Assist acted with the bad faith required to prevail on its Lanham Act unfair competition claim. Following trial, the district court denied Indect's motion for judgment as a matter of law as to invalidity. The district court likewise denied Park Assist's post-trial motion to amend the judgment, which sought to clarify that Indect was not entitled to a broad declaratory judgment that neither Indect's Accused System nor its customers will be found liable for infringement of the '956 patent in the future. Both parties timely appealed from the district court's entry of judgment against them. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We review a district court's ruling on motions for judgment as a matter of law according to the law of the

applicable regional circuit.  *See Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1368 (Fed. Cir. 2021).  The Ninth Circuit reviews the denial of a motion for judgment as a matter of law de novo.  *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1364 (Fed. Cir. 2006) (citing *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004)).  The Ninth Circuit "will not disturb a jury verdict if it is supported by substantial evidence."  *Lytle*, 382 F.3d at 982.

The Ninth Circuit reviews district courts' evidentiary determinations for abuse of discretion.  *See S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 933 (9th Cir. 2014).  "A court abuses it[s] discretion when it applies an incorrect legal rule or relies upon a factual finding that [is] illogical, implausible, or without support in inference that may be drawn from the record."  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1014 (9th Cir. 2013) (internal quotation marks omitted; second alteration in original).

However, "where a district court rules, as a matter of patent law, that a party is precluded from introducing evidence," Federal Circuit law applies, and our review of this sort of dispute is de novo.  *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020).  Our own law also supplies the substantive standards for findings of patent infringement and patent invalidity.  *See Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1370 (Fed. Cir. 2010) (per curiam).  Assessing infringement involves a two-step process: (i) construing any material, disputed terms, which presents a question of law that may be based on subsidiary factual findings; and (ii) applying the properly construed claim language to the accused device or method and determining if every limitation of the claim is present in or practiced as part of such device or method, which presents a question of fact that we review for clear error.  *See EMI Grp. N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998); *see also Philip Morris Prods. S.A. v. Int'l Trade Comm'n*, 63 F.4th 1328, 1348 (Fed. Cir. 2023).

Patent claims may be invalid for a variety of reasons, including obviousness, indefiniteness, and lack of enablement. A patent claim is obvious where the differences between the claim and the prior art are such that the claim as a whole would have been evident to a skilled artisan at the time of the invention. *See, e.g.*, *Spectrum Pharms., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1333 (Fed. Cir. 2015). Obviousness is a question of law based on subsidiary factual findings. *See id.* "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Indefiniteness is a question of law to which we accord de novo review, with any subsidiary factual findings based on extrinsic evidence reviewed for clear error. *See Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1365 (Fed. Cir. 2021). Patent claims are invalid for lack of enablement if a person of ordinary skill in the art, reviewing the entire patent, would be unable to practice them without engaging in undue experimentation. *See Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365-66 (Fed. Cir. 1997). "Whether a claim satisfies the enablement requirement of 35 U.S.C. § 112 is a question of law that we review without deference, although the determination may be based on underlying factual findings, which we review for clear error." *Amgen Inc. v. Sanofi, Aventisub LLC*, 987 F.3d 1080, 1084 (Fed. Cir. 2021).

"To prevail on an unfair-competition claim under [S]ection 43(a) of the Lanham Act stemming from a patentee's marketplace activity in support of his patent, the claimant must first establish that the activity was undertaken in bad faith." *Judkins v. HT Window Fashion Corp.*, 529 F.3d 1334, 1338 (Fed. Cir. 2008). Proof of such bad faith requires "a showing that the claims asserted were objectively baseless, meaning no reasonable litigant could realistically

expect to prevail in a dispute over infringement of the patent." *Id.* at 1338-39 (internal quotation marks omitted). This bad-faith element of a Lanham Act unfair competition claim must be proven by clear and convincing evidence. *See Golan v. Pingel Enter.*, 310 F.3d 1360, 1371-72 (Fed. Cir. 2002).

## III

### A

Indect raises numerous patent issues in its appeal. It challenges the district court's judgment upholding validity by arguing (i) claim 1 of the '956 patent is invalid for indefiniteness and lack of enablement because the claimed method is impossible to perform; (ii) claim 1 is also invalid because the "high resolution image" limitation is indefinite; (iii) the district court improperly allowed the jury to resolve claim construction disputes; and (iv) the district court abused its discretion by excluding evidence that Park Assist had offered to sell a parking system embodying the claimed invention more than a year before filing its patent application, thereby invalidating the patent under the on-sale bar. We agree with the district court on the first three of these issues but vacate and remand for a new trial with respect to the on-sale bar.

### 1

Indect contends that claim 1 of the '956 patent is impossible to perform in its entirety and, therefore, is invalid for indefiniteness and lack of enablement. According to Indect, "[i]t is undisputed that step (h) of claim 1 can only be taken when a space is vacant and step (i) can only be taken when a space is occupied. Thus, it is impossible for all the steps of the method to be taken." Indect Open. Br. at 27; *see also id.* at 13 (describing "fatal impossibility"). The district court rejected these arguments. We do as well.

For purposes of both indefiniteness and lack of enablement, Indect's argument is that the claims, read literally,

require the same parking space to be both occupied and vacant at the same time, which is of course a physical impossibility. Yet there is no basis in the record for the conclusion that a person of ordinary skill in the art would read the claims in this nonsensical manner.

An initial flaw with Indect's position is that it rests on an unstated, and incorrect, assumption that the steps of claim 1 of must be undertaken in the order in which they are written.[3] Indect assumes that step (i), requiring extracting a permit identifier from a high resolution image associated with a vehicle *occupying* a space – must occur after or concurrently with step (h), which requires correcting the occupied status indicated for a space if its thumbnail image shows the space is actually *vacant*. However, "[u]nless the steps of a method actually recite an order, the steps are not ordinarily construed to require one." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) (internal quotation marks omitted). Here, neither "as a matter of logic or grammar" must the steps of claim 1, and particular steps (h) and (i), "be performed in the order written." *Id.*

In any event, there is simply no evidence, much less clear and convincing evidence, that a skilled artisan would read the steps of claim 1's method in the manner Indect proposes. Naturally, we recognize it would be impossible, at a single moment in time, to: (i) obtain an image of a vehicle in a parking spot the system has identified as *occupied* (step (d)), (ii) correct the status of that same space to vacant because a visual review the image shows it is actually *vacant* (step (h)), and also (iii) extract a permit

---

[3] Although the district court did not rely on this conclusion, and Park Assist does not make this argument, "we may affirm a district court judgment on any ground shown by the record." *Hydril Co. LP v. Grant Prideco LP*, 474 F.3d 1344, 1351 (Fed. Cir. 2007).

identifier from the image of the vehicle *occupying* the space (step (i)). If a space is occupied then it cannot also be vacant, and if it is vacant there is no vehicle from which to extract a permit identifier. But the record provides no basis to conclude that a person of ordinary skill in the art would view the claims as requiring this impossibility. Instead, we agree with the district court that "if the space is occupied, step (h) is skipped and steps (i) and (j) are done; if the space is vacant, step (h) is performed." J.A. 76 (cleaned up). Under this understanding of the claims, the claimed method can be entirely performed, although performance, for any single parking space at any single moment, will only involve undertaking *either* step (h) or step (i).

Moreover, like the district court, we acknowledge that the claim language "could have been more clearly written . . . to avoid this confusion," but we are also "mindful that courts 'strive, where[ever] possible, to avoid nonsensical results in construing claim language.'" J.A. 48 (quoting *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1276 (Fed. Cir. 2011)). "[C]onstruction[s] that render[] all embodiments inoperable" are viewed "skeptically." *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1025 (Fed. Cir. 2020).

Indect analogizes this case to two in which we held that "impossible" claims were invalid due to indefiniteness. In *Trustees of Boston University v. Everlight Electronics Co.*, 896 F.3d 1357, 1362 (Fed. Cir. 2018), we "safely conclude[d] that the specification does not enable what the experts agree is physically impossible." The claim at issue there was not enabled because the "specification [did] not teach one of skill in the art how to make the claimed semiconductor device with a monocrystalline growth layer directly on an amorphous buffer layer" because "it is impossible to epitaxially grow a monocrystalline film directly on an amorphous structure." *Id.* Similarly, in *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1359 (Fed. Cir. 1999),

we found the challenged claims invalid because they "embodie[d] an inoperable method that violates the principle of conservation of mass." In each of these cases, the specification could not teach a skilled artisan how to do the impossible; nor could the claims be reasonably construed in any manner other than to require accomplishing these impossibilities. Here, by contrast, Park Assist's claims are not physically impossible to perform; a skilled artisan would not read them as requiring the physical impossibility of a parking space being simultaneously occupied and vacant.

Thus, the situation here is unlike the one we confronted in *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004), on which Indect also relies, because there is a reasonable interpretation of the claims that leads to a sensible result. Indeed, "*Chef America* does not require us to depart from common sense in claim construction." *AlterWAN v. Amazon.com, Inc.*, 63 F.4th 18, 24 (Fed. Cir. 2023). In this case, common sense leads us to determine that one of skill in the art would reasonably understand Park Assist's claim to be one that is entirely possible to perform.

Hence, the district court did not err in failing to find claim 1 of the '956 patent invalid due to indefiniteness or lack of enablement.

2

Limitation (d) recites "obtaining . . . as a result of said occupied status, a single high resolution image of a vehicle occupying said parking space . . . ." Indect argues that this limitation renders claim 1 indefinite because a person of ordinary skill in the art would lack reasonable certainty as to what is, and is not, a "high resolution image." The district court was not persuaded and neither are we.

"Claim language employing terms of degree has long been found definite where it provide[s] enough certainty to

one of skill in the art when read in the context of the invention." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014) (two-judge panel). "[W]hen a claim limitation is defined in 'purely functional terms,' a determination of whether the limitation is sufficiently definite is 'highly dependent on context (e.g., the disclosure in the specification and the knowledge of a person of ordinary skill in the relevant art area).'" *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015). This merely requires that the patent provide "some standard for measuring that [term of] degree." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1290 (Fed. Cir. 2017) (alteration in original). That requirement is satisfied here.

The district court correctly construed "high resolution image," as used in steps (d), (e), and (i) of claim 1, as an "image of sufficient resolution to extract a permit identifier such as a license plate number." J.A. 1692; *see also* J.A. 26. In making this determination, the district court relied on the "specification['s] discuss[ion] [of] 'high resolution image' in the context of reading and extracting a permit identifier, such as a license plate, and [its] distinguish[ing] between an 'occupancy image' and an 'identification image,'" which differ in terms of their required readability. J.A. 27 (quoting '956 pat. at 1:48-55, 20:62-65). We agree with the district court that this specification support is sufficient to permit a person of skill in the art to distinguish between "high resolution images," which are those of such resolution that one is able to extract and read a license place from the image, and those that are not "high resolution," because they cannot be read in this manner. This is sufficiently reasonable certainty as to the scope of the claims.

Therefore, we affirm the district court's determination that claim 1 is not indefinite based on its "high resolution" limitation.

3

Indect next accuses the district court of failing in its responsibility to construe all material, disputed claim terms, *see O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1373 (Fed. Cir. 2008), and instead improperly delegating the task of claim construction to the jury. In particular, Indect asserts that the court should have defined the resolution terms of steps (a) and (b), and also determined whether steps (i) and (j) are limited to identifying cars prohibited from certain parking spaces ("blacklisting") or also extend to identifying cars permitted to be in certain spaces ("whitelisting"). The district court committed no error.

With respect to steps (a) and (b), Park Assist requested that the district court construe these steps as applying only to low resolution images, but instead the district court told the jury to apply the "plain and ordinary meaning" of the terms. J.A. 6429. In doing so, the district court adopted the position advocated by *Indect*. J.A. 7761-62 (Indect arguing "[t]he monitoring (step (a)) and detecting (step (b)) steps should not be construed to require any particular resolution"). When the district court rejected Park Assist's proposed construction at trial, Indect *agreed* with the district court that it should not give any specific construction of this term. J.A. 13400-03 (district court stating it had "made [its] claim construction [already] and [was] not about to dabble with [it] anymore," after which Indect counsel stated "[w]e agree"); J.A. 8273 (joint proposed jury instructions providing that "[f]or any words in the claim for which [the district court] ha[s] not provided you with a definition, you should apply the plain and ordinary meaning").[4] Nor did Indect ever object to any of the testimony

---

[4] Indect insists it presented this issue to the district court "through motions in limine and proposed jury

14                    INDECT USA CORP. v. PARK ASSIST, LLC

elicited by Park Assist relating to steps (a) and (b).  Indect's arguments on appeal that the district court should have nonetheless construed these steps, or that the district court should have sua sponte excluded Park Assist's expert's testimony that assumed these steps are limited to low resolution images,[5] are waived.  *See Conoco, Inc. v. Energy & Evt. Int'l, L.C.¸* 460 F.3d 1349, 1359-60 (Fed. Cir. 2006) ("[A] party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below."); *see also Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir. 1996) ("By

---

instructions," Indect Open. Br. at 25; *see also id.* at 53, but none of the record citations to which it directs us shows Indect asking the district court to construe claim steps (a) and (b) and define the steps as not restricted to low resolution images.  *See* J.A. 130, 6503, 7618, 7750, 8220, 8646 (non-substantive title pages); J.A. 7761-68 (Indect opposing construction "requir[ing] any particular resolution"); J.A. 6517-21 (discussing steps (h) and/or (j)), 7639-42 (same); J.A. 7973 (requesting court address, and reject, Park Assist's proposed construction requiring particular resolution but not offering any alternative construction); J.A. 8271-72 (noting objection to Park Assist's construction requiring lower resolution image for steps (a) and (b) but not proposing alternative other than "plain and ordinary meaning"); J.A. 8654-55 (final jury instructions); J.A. 13387-403 (Indect agreeing no further construction was needed regarding the resolution of images in steps (a) and (b)).

[5] Park Assist's invalidity expert opined that the image used in step (a) has to be lower in resolution than the image collected at step (d) and, further, that her opinions concerning certain prior art references (the M3 brochure and Intertraffic article) depended on steps (a) and (b) being limited to low resolution images.  J.A. 14525-27, 14584-85.

failing to object to evidence at trial and request a ruling on such an objection, a party waives the right to raise admissibility issues on appeal.").

With respect to steps (i) and (j), Indect asserts error in the district court's refusal to determine whether these steps are limited to "whitelisting" or if they also extend to include "blacklisting." J.A. 14373, 14520. Claim steps (i) and (j) recite "initiating an infringement process for said vehicle having said permit identifier that fails to coincide with at least one parking permit identification." '956 pat. at 23:1-4. The district court construed "infringement process" as "a notice of unauthorized parking." J.A. 33. The parties agree that the court's construction encompasses whitelisting. The district court rejected Indect's request to construe step (j) as also encompassing the "blacklisting" feature taught in the prior art, but neither did the court rule that blacklisting was excluded from the claim. J.A. 7973.

The scope of steps (i) and (j) was relevant to Indect's obviousness defense, and specifically to the question of whether Indect's "blacklisting" prior art references disclose an "infringement process" consistent with the court's construction. The district court properly viewed this as a fact question requiring the jury to apply its construction of "infringement process" to the prior art, rather than a new claim construction dispute requiring judicial resolution as a matter of law. *See Sage Prods., LLC v. Stewart*, 133 F.4th 1376, 1381 (Fed. Cir. 2025) ("What the prior art discloses is a fact question.") (cleaned up). Thus, the district court did not err in failing to further construe its already-established construction or by instructing the jury to evaluate the prior art based on the construction the court provided. *See generally Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1325 (Fed. Cir. 2013) ("[T]he district court [did not] delegate[] claim construction to the jury . . . especially . . . where, as here, the jury was instructed to apply the district court's claim constructions.").

4

Indect also attempted to prove that the claims of the '956 patent are invalid as obvious based on the on-sale bar. To be precise, Indect contended in the district court that a Park Assist document memorializing an offer to sell Park Assist's "M3 Parking System" – whose method the parties "do[] not dispute. . . is indistinguishable from [Park Assist's] '956 patent," J.A. 52 – to the Cadillac Fairview Chinook Centre in Calgary, Canada ("Chinook Document" or "Chinook") more than one year before the filing date of the '956 patent invalidates each of the patent's claims. J.A. 53, 15606-10. It is undisputed that, for the '956 patent, "the critical date to constitute prior art is May 8, 2010, or one year before the filing date of the claimed invention." J.A. 52.

The district court excluded the Chinook Document from evidence on the ground that it "only offers the M3 Parking System product, not the method the M3 Parking System relies upon." J.A. 53-54. But the court's conclusion that an offer to sell a product is inadmissible when the patent also covers a process is erroneous as a matter of law. "Where a product embodies essential features of the patented invention, a sale of the product is tantamount to a sale of the process performed by that product and thus creates an on-sale bar to the process claims as well." *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 970 (Fed. Cir. 2020) (cleaned up); *see also Robotic Vision Sys. v. View Eng'g, Inc.*, 249 F.3d 1307, 1311 (Fed. Cir. 2001) (holding that product can be invalidating prior art to method claim if product itself discloses some or all steps of claimed method); *Quest Integrity USA, LLC v. Cokebusters USA Inc.*, 924 F.3d 1220, 1228 (Fed. Cir. 2019) ("Performance of a claimed method for compensation, or a commercial offer to perform the method, can also trigger the on-sale bar, even where no product is sold or offered for sale.").

In reaching its decision, the district court relied on *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983). There, we applied the longstanding principle that "method patents [a]re exhausted by the sale of an item that embodie[s] the method." *Quanta Comp., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 629 (2008). While the product in *W.L. Gore* did not sufficiently embody the steps of the patented method at issue, here a reasonable factfinder could find that Park Assist's M3 Parking System does sufficiently disclose the steps of the method of claim 1, especially given that in the district court the parties did "not dispute" that the Chinook document was "indistinguishable from [the] '956 patent." J.A. 52; *but see* Park Assist Open. Br. at 53 (contending, on appeal, that "Chinook document did not disclose steps of the patented method").

The exclusion of the potentially invalidating Chinook Document, which could be reasonably found to constitute an offer for sale of a product sufficiently disclosing the patented process more than a year prior to the filing of the patent application, was based on a clear error of law and, thus, an abuse of discretion. Therefore, we reverse the district court's exclusion of the Chinook Document, vacate the judgment that the claims of the '956 patent are not invalid, and remand for a new trial on obviousness based on the on-sale bar.

B

Indect next appeals the district court's denial of its motion for judgment as a matter of law on its unfair competition claim. Indect sought to prove that Park Assist violated Section 43(a) of the Lanham Act by sending letters to Indect's current and potential customers and by suing one of its customers, the Airport, despite Park Assist's alleged lack of evidence that the Airport was actually infringing any claim of the '956 patent. Indect faults the district court for excluding evidence relating to the Airport litigation.

*See* J.A. 14153 (instructing jury to "disregard everything about the San Diego Airport with the exception that there were letters that were sent out referencing the fact that there was that litigation pending and that they considered it to . . . [have] substantial commercial value"). We agree with Indect that the district court's decision to exclude this evidence was an abuse of discretion.

To prevail on its claim under Section 43(a) of the Lanham Act, Indect was required to prove that Park Assist acted in bad faith, which Indect tried to show by proving that Park Assist brought "objectively baseless" patent litigation against the Airport. *See generally Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254 (Fed. Cir. 2008). In an effort to meet its burden, Indect proffered evidence that Park Assist had filed suit against the Airport, an Indect customer, based on the Airport's use of Indect's UPSOLUT system, notwithstanding that Park Assist had no affirmative evidence of infringement. Indect further alleged that Park Assist knew or should have known from publicly available information that the Airport was not, in fact, infringing. The district court cited Indect's evidence when it denied Park Assist's motion for summary judgment of no unfair competition, explaining that "Indect ha[d] at least created a triable issue of fact as to whether Park Assist's continued pursuit of the Airport Case was objectively baseless." J.A. 65; *see also* J.A. 80 (denying Park Assist motion in limine that sought "categorical exclusion of evidence related to the airport lawsuit and patent notice letters sent, items th[e] Court found relevant to Indect's claims").

Then, at trial, the district court changed course, instructing Indect:

You can certainly put on evidence to show that the letters were sent out, and you can maybe put on some evidence as to the fact that they [i.e., Park Assist] thought that they got some commercial

advantage out of the litigation, but we're not going to talk about whether or not the lawsuit itself had merit.

J.A. 137; *see also* J.A. 133 ("[B]ecause, if we're going to go into that, we're going to be here for a lot longer."); J.A. 6193-97 (explaining need to avoid "trial within a trial"); J.A. 13379 ("[W]e're not going to relitigate that case."). The district court cited as support for its evidentiary decision the fact that the Airport case had, subsequent to the summary judgment ruling, settled and could not be appealed.

Park Assist insists that the district court properly excluded the evidence under Federal Rule of Evidence 403 , but the district court did not cite Rule 403 nor expressly weigh the probative value of the evidence against the countervailing concerns of the Rule (e.g., unfair prejudice, confusion, waste of time). Nor was the Airport case ever resolved on the merits, as Park Assist mistakenly suggests. Park Assist continued to press its counterclaim that Indect induced the Airport to infringe even after the Airport case itself was dismissed. Most importantly, as the district court correctly held at the summary judgment stage, Indect's evidence, if credited by the jury, could have supported a verdict in favor of Indect on its unfair competition claim, as it could have led to a finding that Park Assist's suit against the Airport was objectively baseless and, hence, Park Assist acted in bad faith.

The court should have allowed introduction of evidence about the Airport litigation to permit the jury to fully evaluate whether Indect proved its claim. *See generally Tex. Digit. Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1216-19 (Fed. Cir. 2002), *abrogated on other grounds by Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). By instead excluding such evidence, the district court abused its discretion. Therefore, we reverse the district court's admissibility determination, vacate the

judgment of no liability for unfair competition, and remand for a new trial on the bad faith element of Indect's Lanham Act claim.[6]

IV

We turn now to Park Assist's cross-appeal. Park Assist challenges the district court's (i) determination that the preamble of claim 1 is limiting; (ii) construction of "displaying a thumbnail image" as requiring "near real-time" feedback; and (iii) grant of Indect's request for a declaratory judgment of no infringement by any of Indect's past, present, or future customers. We agree with the district court on the first two of these issues but vacate its declaratory judgment of non-infringement and remand for further proceedings.

A

"We review claim construction de novo, except for subsidiary facts based on extrinsic evidence, which we review for clear error." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 971 (Fed. Cir. 2018)

---

[6] Park Assist asks that if we decide to order further proceedings on Indect's unfair competition claim, as we have, we also "revise[]" the district court's order to "allow in Park Assist's strong evidence that the Airport was infringing;" it further asks us to vacate the jury's finding that Indect met its burden on the non-bad faith elements of its claim. Park Assist Open. Br. at 30. As Park Assist did not include these requests in its cross-appeal, and only addressed them in passing in its response to Indect's appeal, we cannot grant this relief. *See AquaTex Indus., Inc. v. Techniche Sols.*, 419 F.3d 1374, 1379 (Fed. Cir. 2005) ("Because [a party] failed to cross appeal [an issue] properly, we decline to consider it."). The district court will determine in the first instance what evidence relating to the Airport litigation should be admitted at the new trial.

(citing *Teva Pharms. USA, Inc. v. Sandoz Inc.* 574 U.S. 318 (2015)).  We agree with the district court's challenged claim constructions.

1

The district court determined that claim 1's preamble, "[a] method of managing a plurality of parking spaces," is limiting.  Under this view of the claims, the patented method is not practiced if it is applied to just a single parking space.  J.A. 7625 ("The claim language makes no sense divorced from management of parking facilities.").  We agree with the district court.

"Whether to treat a preamble as a limitation is a determination resolved only on review of the entire[] . . . patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Catalina Mktg. Int'l Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (internal quotation marks omitted; alterations in original).  A preamble may be limiting "if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." *Id.* (internal quotation marks omitted).

Here, the preamble gives "life, meaning, and vitality" to the claims.  As is evident from the intrinsic evidence, the claims were intended by the inventors to apply only to a "plurality of parking spaces," not to a single parking spot. The specification repeatedly refers to "slots" and "spaces," which are both plural nouns, and explicitly teaches that the patent "relates to the management of a parking lot," which necessarily consists of more than one parking spot.  '956 pat. at 1:12-31.  Additional "objectives of the . . . invention" are to "find available parking in a parking lot," to "find[] [a] car within a parking lot," to "enable preferential parking . . . within [a] parking lot," to "reduce parking lot energy consumption," and to "improve parking lot security," all of which are plainly directed towards parking lots, and not to single parking spaces. *Id.* at 2:1-26.

The systems and methods of the '956 patent would not be necessary for management of a single parking space. The preamble, which introduces the concept of "managing a plurality of parking spaces" and is the only portion of the claim that does so, is necessary in order to give meaning to the claim and prevent it from, improperly, reading on a single parking space. We affirm the district court's judgment that the preamble is limiting.

2

The district court additionally adopted Indect's proposed construction of step (f)'s "displaying a thumbnail image" as meaning "displaying a small near real-time image of a picture of said parking space on the computer screen." J.A. 8266. In reaching this conclusion, the district court observed that while the specification disclosed an embodiment allowing for updates to occur as infrequently as every ten minutes, it "also teaches that the thumbnail is updated every time a vehicle enters or exits a parking space." J.A. 31. We agree with the district court that "the intent of the invention is in part to 'provide real-time feedback,' and the ten-minute threshold is merely a failsafe provision designed as a back-up to an undetected entry or exit," which necessarily means that the reviews must occur, in the usual course, in under ten minutes. J.A. 31 (quoting '956 pat. at 14:58-61).

The near real-time construction does not improperly import a limitation from the specification into the claims. Rather, the district court correctly construed the claim language in light of the specification, which specifies that the '956 patent is clearly directed to "enabl[ing] all parking slots 15 to be surveyed in real time." '956 pat. at 14:35-36; *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1321 (Fed. Cir. 2011) (finding no improper importation of limitation from specification where "[t]he written description repeatedly and consistently define[d] the invention" as including the limitation). The steps of

claim 1 that follow step (f) – namely, steps (g) and (h), which require review of the thumbnail image and, if necessary, correction of the occupancy status of a parking spot based on the image – cannot be performed if the thumbnails are outdated and inaccurate. Thus, we affirm the district court's construction.

B

Finally, Park Assist objects to the broad scope of the district court's declaratory judgment of non-infringement, which extends to past, present, and future customers' use of Indect's Accused System. In granting Indect's Third Claim for Declaratory Relief, the district court insulated Indect from all liability for induced infringement relating to the accused UPSOLUT system, no matter how the system is implemented, by whom, or when. Because this extensive relief is not supported by sufficient findings, we vacate the district court's declaratory judgment and remand for further proceedings.

Park Assist challenges the district court's declaratory judgment of non-infringement by Indect's customers on multiple grounds: the absence of findings that the UPSOLUT system is incapable of infringing, Indect's lack of standing, and the district court's lack of subject matter jurisdiction.[7] Indect responds principally by relying on the "*Kessler* Doctrine," which prohibits patentees from continuing to assert infringement against users of a product that

---

[7] Park Assist also contends that both judgments of non-infringement (i.e., no direct infringement by Indect and no induced infringement of Indect's customers) should be reversed because they are based on incorrect claim constructions (of the preamble and "displaying a thumbnail image"). As we have affirmed the district court's constructions, this contention is unavailing.

has been found not to infringe. *See Kessler v. Eldred,* 206 U.S. 285 (1907).

The *Kessler* Doctrine "allow[s] an adjudged non-infringer to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Brain Life, LLC v. Elekta Inc.,* 746 F.3d 1045, 1056 (Fed. Cir. 2014) (internal emphasis omitted). We have described the *Kessler* Doctrine as "granting a 'limited trade right' that attaches to [a] product itself." *In re PersonalWeb Techs. LLC,* 961 F.3d 1365, 1378 (Fed. Cir. 2020). Importantly, the scope of that right is only so far as necessary "to protect any products as to which the manufacturer established a right not to be sued for infringement," and discerning that extent requires "an adjudication on the merits" of the claim of infringement. *Id.* at 1379.

Here, there has been no adjudication of whether the UPSOLUT system, in all of its actual and potential implementations, is non-infringing. To the contrary, the district court expressly refused to make such a determination. *See* J.A. 163 ("[T]he [c]ourt will not delve into the evidence to determine whether Indect's Accused System is capable of infringing."). The sole infringement finding in the record is the jury's answer of "No" to the following question:

> Has Park Assist LLC ("Park Assist") proven by a preponderance of the evidence that Indect has directly infringed or is directly infringing claim 1 of the '956 patent by performing every required step of the claimed method?

J.A. 8520. This is not a finding that Indect's UPSOLUT system does not, and cannot, infringe claim 1. Thus, even assuming Indect had standing, and further assuming the district court had jurisdiction, the factual premise required for the broad relief granted by the district court – a finding that UPSOLUT cannot be used in an infringing manner – is, at present, missing.

Accordingly, we vacate the district court's grant of Indect's Third Claim for Declaratory Relief. On remand, the district court, in its discretion, may, if asked, assess whether the UPSOLUT is capable of infringement. Alternatively, the district court might wait to assess infringement until after the further proceedings we are ordering with respect to validity. If those proceeding lead to a judgment of invalidity, that determination would impact whether the district court can exercise jurisdiction over the infringement claims and counterclaims, given that an invalid claim cannot be infringed. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004) ("[I]nvalidity operates as a complete defense to infringement for any product, forever.") (internal quotation marks omitted).

V

We have considered the parties' remaining arguments and find they lack merit. Accordingly, for the foregoing reasons, the district court's judgment is affirmed-in-part, reversed-in-part, vacated-in-part, and remanded for further proceedings consistent with this Opinion.

### AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED

### COSTS

Each party to bear its own costs.